```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SHANFA LI and GUIMING SHAO, on behalf
of themselves and others similarly situated,

                      Plaintiff,                          OPINION AND ORDER

        -against-                                         16 Civ. 7787 (JCM)

CHINATOWN TAKE-OUT INC.,
d/b/a/ China Town Take Out; and
YECHIEL MEITELES,
                      Defendants.
--------------------------------------------------------X
```

On September 29, 2016, Shanfa Li and Guiming Shao (the "Plaintiffs") brought this action under the Fair Labor Standards Act ("FLSA") and New York Labor Laws against Chinatown Take-Out Inc. and Yechiel Meiteles (the "Defendants") in the Northern District of New York. (Docket No. 1). On October 5, 2016, the case was transferred to the Southern District. (Docket No. 4). Plaintiffs allege that the Defendants failed to pay the applicable minimum wage and overtime compensation for hours worked in excess of forty hours per week. (Docket No. 1 at 1–2). Presently before the Court is Plaintiffs' motion for (1) conditional certification as a collective action under 29 U.S.C. § 216(b); (2) approval of Plaintiffs proposed notice and consent form; (3) tolling of the FLSA statute of limitations; and (4) production by Defendants of contact information for all of Defendants' "former non-managerial employees." (Docket No. 41 at 1–2). Defendants opposed the motion on September 11, 2017, (Docket No. 44), and Plaintiffs filed their reply on September 15, 2017, (Docket No. 46). For the reasons that follow, Plaintiffs' motion is denied without prejudice.

## I. BACKGROUND

Defendant CHINATOWN TAKE-OUT INC. d/b/a/ Chinatown Take-Out ("Chinatown") is a New York corporate entity located in Wesley Hills, New York. (Compl.[1] at ¶ 9). Defendant Yechiel Meiteles is the owner and operator of China Town Take Out. (*Id.* at ¶¶ 13–15).

Plaintiff Shanfa Li ("Li") asserts that he was employed as a "miscellaneous worker" at Chinatown from August 25, 2015 to August 31, 2016. (Pls.' Br.[2] at 2). He maintains that his work included "cleaning the floors and tables, washing dishes, stirring and cutting in the kitchen, and whatever else [he] was instructed to do." (Li. Aff.[3] at ¶ 3). While at Chinatown, Li alleges that he worked eleven hours each day from Sunday through Thursday and three hours on Friday, totaling fifty-eight hours each week. (*Id.* at ¶¶ 7, 8). He also alleges that he was never given a fixed meal break for lunch or dinner. (*Id.* at ¶ 9). According to Li, he was told that he would be paid $650 each week; however, he was "frequently paid every other week or paid less" than what he was owed. (*Id.* at ¶ 10). In total, he alleges that he was paid $5500 less than what he was promised and never received overtime or spread of hours' wages. (*Id.* at ¶¶ 11, 13). Finally, Li asserts that he never received notice of his wages in either English or Mandarin, his native language, and was never informed of his hourly rate. (*Id.* at ¶¶ 12, 14).

Plaintiff Guiming Shao ("Shao") alleges that he worked as a fry wok at Chinatown from November 2008 until November 3, 2016. (Shao Aff.[4] at ¶ 3). While employed at Chinatown, Shao asserts that he worked the same hours as Plaintiff Li (totaling fifty-eight hours each week). (*Id.* at ¶¶ 7–9). He maintains that he took approximately twenty to thirty minutes each day as a

---

[1] Refers to Plaintiffs' Complaint. (Docket No. 1).

[2] Refers to Plaintiffs' Memorandum of Law in Support of the Motion for Conditional Certification. (Docket No. 41).

[3] Refers to the Affidavit of Plaintiff Shanfa Li. (Docket No. 40-4).

[4] Refers to the Affidavit of Plaintiff Guiming Shao. (Docket No. 40-5).

break for meals. (*Id.* at ¶ 11). Shao alleges that he was paid $3000 each month in three $1000 installments, usually in cash. (*Id.* at ¶¶ 12, 13). However, he also states that he would sign for his pay two times a year, but "did not understand the contents of the documents" because "they were exclusively in English." (*Id.* at ¶ 18). Like Li, Shao asserts that he was never told his hourly rate, that he never received a wage notice in English or Mandarin, his native language, and that he never received overtime or spread of hours' wages. (*Id.* at ¶¶ 14–17).

Regarding other similarly situated employees, Li alleges that he knows other employees were underpaid because he had "conversations about pay with one of the previous bosses" who "did not tell [him] what other employees made, but said that he had received complaints from other people as well." (Li. Aff. at ¶ 15).

## II. DISCUSSION

Plaintiffs seek to conditionally certify a collective that includes all non-managerial employees who worked for Defendants dating back to April 15, 2012.[5] (Pls. Br. at 9–10). Defendants, however, argue that that Plaintiffs inappropriately seek to expand the scope of this action based on "vague and wholly conclusory" allegations. (Defs. Opp.[6] at 4). As such, Defendants maintain that Plaintiffs have failed to meet their burden of demonstrating that they are similarly situated to the potential opt-in plaintiffs. (*Id.*).

---

[5] Though the complaint states that this action is brought on behalf of "all other and former non-exempt deliverymen, waitstaff, and kitchen staff who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case," (Compl. at ¶ 35), Plaintiffs' motion indicates that Plaintiffs seek to protect the rights of "all individuals who have worked for Defendants as a non-managerial employee between April 15, 2012 and the date this Court decides this Motion," (Pl. Br. at 10). Given that Plaintiffs' motion focuses on all non-managerial employees, the Court disregards the collective suggested in the complaint.

[6] Refers to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification. (Docket No. 44).

## A. Conditional Collective Action Certification Standard

Under the FLSA, a plaintiff may seek certification to proceed as a collective action, thus providing other "similarly situated" employees the opportunity to join the litigation. 29 U.S.C. § 216(b); *see also Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 478 (S.D.N.Y. 2016). Courts in the Second Circuit employ a two-step certification process for an FLSA collective action. *See, e.g.*, *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 610 (S.D.N.Y. 2016). The first step, which is presently at issue, is commonly referred to as conditional certification. *See Morris v. Lettire Const. Corp.*, 896 F. Supp. 2d 265, 269 (S.D.N.Y. 2012). During this stage, "the court mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). Plaintiffs bear the burden of making a "modest factual showing" that the named plaintiffs and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id.* (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)).

"The modest factual showing cannot be satisfied simply by unsupported assertions . . . but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Id.* (citations and internal quotation marks omitted); *Johnson*, 160 F. Supp. 3d at 610 (explaining that the low standard is appropriate because conditional certification is merely a useful case management tool to facilitate notice to potential class members). "Nevertheless, while a plaintiff's burden of proof is low, it is not non-existent [and] certification is not automatic." *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264(KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (internal quotation

marks omitted). Plaintiffs must offer "substantial allegations" demonstrating a "factual nexus" between themselves and the potential opt-in plaintiffs. *Diaz v. S & H Bondi's Dep't Store*, No. 10 Civ. 7676(PGG), 2012 WL 137460, at *3 (S.D.N.Y. Jan. 18, 2012) (internal quotation marks omitted). Plaintiffs may rely on their own pleadings, affidavits, and declarations, as well as the affidavits of other potential class members to meet their burden. *See Warman v. Am. Nat'l Standards Inst.*, 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016). Importantly, the court will not weigh the merits of the plaintiffs' underlying claims, resolve factual disputes, or evaluate credibility during this stage. *See Morris*, 896 F. Supp. 2d at 269.

During the second stage, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. If the record reveals that the opt-in plaintiffs are not "similarly situated" to the named plaintiffs, Defendants may move for decertification and the opt-in plaintiffs' claims may be dismissed without prejudice. *See id.*

"Where . . . a conditional certification motion is made after some, but not all, discovery has occurred, it remains an open question whether some kind of 'intermediate scrutiny' should apply." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480–82 (S.D.N.Y. 2016) (finding a "modest plus" standard appropriate because review "may properly grow more exacting as discovery proceeds"). In general, district courts in this Circuit decline to apply increased scrutiny until discovery closes in full. *See id.* at 481 (collecting cases). Here, discovery closed in full on January 31, 2018, (*see* December 18, 2017 Minute Entry), approximately six months after Plaintiffs submitted their initial briefing. To date, Plaintiffs have not supplemented their motion with additional facts adduced during discovery.

Though discovery is now closed, the Court finds no binding authority *requiring* heightened scrutiny following the close of discovery,[7] particularly when the notice and opt-in period has not yet closed, as is the case here. *See Gortat v. Capala Bros., Inc*, No. 07 Civ. 3629 (ILG), 2010 WL 1423018, at *9 (E.D.N.Y. Apr. 9, 2010) ("[I]t is clear that the court envisions the heightened standard applying not only after discovery, but also *after notice and opportunity to opt-in.*"); *Mata v. Foodbridge LLC*, No. 14 Civ. 8754(ER), 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015) (explaining that stage two scrutiny applies "after additional plaintiffs have opted in")*; Hernandez v. Fresh Diet, Inc.*, No. 12 Civ. 4339 (ALC)(JLC), 2014 WL 5039431, at *3 (S.D.N.Y. Sept. 29, 2014) ("At the second, post-discovery, 'decertification' stage, courts apply a more 'stringent standard' of proof . . ."). This Court agrees that the "heightened scrutiny standard is only appropriate after the opt-in period has ended and the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated." *Gortat*, 2010 WL 1423018, at *10; *see also Brown v. Barnes and Noble, Inc.*, 252 F. Supp. 3d 255, 262 (S.D.N.Y. 2017) (adopting the language in *Gortat*, 2010 WL 1423018, at *10); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 121 n.1 (S.D.N.Y. 2014) (same). Accordingly, the Court applies the modest standard to the instant motion.

---

[7] The Second Circuit "certified for immediate review" the issue of whether a more rigorous standard applies post-discovery to motions for conditional certification under the FLSA, but the court did not reach the issue. *See Glatt v. Fox Searchlight Pictures*, 811 F.3d 528, 540 (2d Cir. 2016). Moreover, intra-circuit authority on this issue conflicts. *Compare Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316(PAC), 2006 WL 2819730, at *9 (S.D.N.Y. Sept. 29, 2006) ("Post discovery . . . the Court applies heightened scrutiny to this inquiry as compared to pre-discovery."), *with Gortat v. Capala Bros., Inc*, No. 07 Civ. 3629 (ILG), 2010 WL 1423018, at *9 n.12 (E.D.N.Y. Apr. 9, 2010) ("[*Torres*] explicitly endorsed the application of heightened scrutiny in a post-discovery, but pre-notice, context. . . . This Court declines to follow *Torres*."), *and Espinoza v. 953 Associates LLC,* 280 F.R.D. 113, 123 (S.D.N.Y. 2011) ("Whether the second stage heightened scrutiny automatically applies where discovery has closed is open for debate.").

## B. Adequacy of Plaintiffs' Showing

Plaintiffs seek to conditionally certify a collective of all "non-managerial employees" who were employed by Defendants between April 15, 2012 and the date of this decision. (Pls. Br. at 10). The factual record supporting this motion, limited to the complaint and the affidavits of the two named plaintiffs, "is insufficient to support even an inference that a common policy or plan that violated the law existed with respect to this variety of potential opt-in plaintiff." *Sanchez*, 2014 WL 465542, at *1. Consequently, Plaintiffs have not met their modest burden for conditional collective action certification.

Both Li and Shao allege that they worked fifty-eight hours each week, but were never paid overtime or spread of hours' wages, and were never informed of their hourly rate. (Li. Aff. at ¶¶ 8, 12, 13; Shao. Aff. at ¶¶ 9, 14, 16, 17). Li's affidavit indicates that he was "promised a flat rate of $650 per week," but was frequently paid less than what he was owed. (Li Aff. at ¶10). Unlike Li, Shao alleges that he was paid $3000 each month in three $1000 installments, often in cash. (*Id.* at ¶¶ 12, 13).

Neither affidavit, however, contains "substantial allegations" demonstrating a "factual nexus" between named Plaintiffs and the potential opt-in plaintiffs. *Diaz,* 2012 WL 137460, at *3. Indeed, nothing in Shao's affidavit pertains to the hours or wages of the other individuals employed by Defendants. (*See* Shao Aff. ¶¶ 1–22). Li's affidavit contains one reference to Defendants' underpayment of other employees: "I know that other employees were underpaid because I had conversations about pay with one of the previous bosses who went by the nickname Ah Dong. He did not tell me what other employees made, but said that he had

received complaints from other people as well."[8] (Li. Aff. at ¶ 15).  This statement, by itself, is not a "sufficient factual basis on which to conditionally certify a FLSA collective action as to all of Defendants' non-managerial employees[.]" *Feng v. Hampshire Times*, No. 14 Civ. 7102 (SHS) (JLC), 2015 WL 1061973, at *3 (S.D.N.Y. Mar. 11, 2015) (finding plaintiff's statement that he had spoken to others and was not aware of any employee who received overtime to be an insufficient basis on which to grant conditional certification).

First, the existence of complaints from "other employees" regarding pay does not suggest that Plaintiffs and all of Defendants' non-managerial employees "together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555; *Warman*, 193 F. Supp. 3d at 323 ("The relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA.").  "To meet their burden, Plaintiffs were obligated to provide 'some probative information regarding similarly situated employees such as their names, their duties and their hours worked.'" *Feng*, 2015 WL 1061973, at *3 (quoting *Qing Gu v. T.C. Chikurin, Inc.*, No. 13 Civ. 2322 (SJ)(MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014)).  Plaintiffs, however, do not provide any of this information.  Though the Court recognizes that Plaintiffs had difficulty communicating with their English speaking co-workers, it is difficult to imagine that Plaintiff Shao, who worked for Defendants as a fry wok for eight years, never knew the names of any of his co-workers, especially given the number of hours he allegedly worked.  Regardless, Plaintiffs fail to allege that they observed other non-managerial employees working similar hours or receiving similar treatment. *See, e.g.*, *Alvarez v. Schnipper*

---

[8] Defendants are wrong to suggest that the Court cannot consider this statement because it is hearsay. At this stage, the court may rely on "pleadings, affidavits, and declarations . . . including any hearsay statements contained therein." *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 269 (S.D.N.Y. 2012) (citation omitted).

*Rests. LLC*, No. 16 Civ. 5779 (ER), 2017 WL 6375793, at *4 (S.D.N.Y. Dec. 11, 2017); *Mata*, 2015 WL 3457293, at *3 ("[Plaintiff] provides no factual support demonstrating knowledge of a common scheme impacting the diverse array of employees covered in his Complaint.").

Plaintiffs maintain that they have "taken the first step towards the required factual showing of proof by appearing before the Court." (Pl. Br. at 5). In other words, Plaintiffs seem to suggest that they have established the existence of a common policy in violation of the FLSA as to all types of non-managerial employees because a fry wok and a miscellaneous worker, employees with different duties, were allegedly subject to the same policies in violation of the FLSA. (*Id.*). Plaintiffs, however, cite no authority that would permit the Court to draw such a significant inference. Moreover, courts in this district generally require a "modest but *job-specific* factual showing[.]" *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015) (collecting cases and limiting certification to chefs and deliverymen in the absence of allegations regarding other types of employees). As such, the Court denies conditional certification as to all of Defendants' non-managerial employees.

Furthermore, the Court will not conditionally certify a collective action consisting solely of fry woks and miscellaneous workers on the present record. Plaintiffs have not provided the Court with anything on which to determine that there are other similarly situated fry woks and miscellaneous workers employed by Defendants. Plaintiff Li only states that he knows other employees were underpaid, without describing "who [the other employees] are, what their base salary is, whether they are [fry woks or miscellaneous workers]," *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 510 (S.D.N.Y. 2010), "or whether they work enough to qualify for overtime compensation," *Feng*, 2015 WL 1061973, at *3. This is not a case where the Court can "fairly infer" that other fry woks and miscellaneous workers worked the same hours as

-9-

Plaintiffs. *See She Jian Guo v. Tommy's Sushi Inc.*, No. 14 Civ. 3964(PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) (inferring that all deliverymen worked similar shifts for comparable pay because plaintiffs provided three affidavits from deliverymen containing "specific factual allegations" which established that the named plaintiffs worked approximately the same hours and were paid the same wages); *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2014 WL 4593944, at *5 (S.D.N.Y. Sept. 15, 2014) (granting conditional certification based on five affidavits of movers which established that each worked in excess of forty hours each week but did not receive overtime pay).

Plaintiffs are correct that courts in the Second Circuit have granted conditional certification on the basis of a complaint and one accompanying affidavit, (Pl. Reply[9] at 4), but the affidavit must also make clear that the affiant has "personal knowledge that other coworkers were subjected to similar employer practices," *Guo Qing Wang v. H.B. Rest. Grp., Inc.,* No. 14 Civ. 813 (CM), 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014). For example, in *Yap v. Mooncake Foods, Inc.*, the court granted conditional certification as to deliverymen and chefs employed by defendants at multiple locations on the basis of the named plaintiffs' affirmations, which contained the affiants' personal observations regarding other deliverymen and chefs. 146 F. Supp. 3d 552, 563–64 (S.D.N.Y. 2015); *see Yap v. Mooncake Foods, Inc.*, No. 13 Civ. 6534 (ER), ECF No. 30 at ¶ 18 ("I personally know three deliveryman from the SOHO location who was paid similarly to me based on conversations."); *Id.* at ECF No. 31 at ¶ 13 ("I personally know of three to five . . . chefs that worked at the SOHO and Chelsea locations that worked the same number of hours as myself and were paid similarly to me."). In contrast, Plaintiffs' complaint and affidavits do not contain any factual allegations specific to other fry woks and

---

[9] Refers to Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification. (Docket No. 46).

miscellaneous workers. Thus, the Court cannot infer that other fry woks and miscellaneous workers employed by Defendants were subject to a common policy or practice in violation of the FLSA on the current record.

Though conditional certification would be inappropriate at this point, "[t]he Court does not hold that no class may be properly conditionally certified in this action." *Sanchez*, 2014 WL 465542, at *2. "Even where a plaintiff's motion to certify an FLSA collective action fails to assert facts sufficient to meet the § 216(b) threshold, courts in this district have often ordered the disclosure of contact information for potential opt-in plaintiffs so that discovery into the collective allegations could continue and the plaintiffs could renew their motion for certification at a later date." *Guan Ming Lin*, 755 F. Supp. at 513 (collecting cases); *Fei v. WestLB AG*, No. 07 Civ. 8785(HB)(FM), 2008 WL 7863592, at *2 (S.D.N.Y. Apr. 23, 2008) ( "[C]onditional certification is not a prerequisite to the turnover of information concerning the identity of potential class members.").

"In light of the remedial purpose of the FLSA and the Court's broad discretionary power," *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349(DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006), Plaintiffs' request for an order of discovery is granted in part. Defendants are directed to provide Plaintiffs with the "full names, job titles, last known mailing addresses, email addresses, telephone numbers, and dates of employment" for the individuals employed by Defendants as fry woks or miscellaneous workers between April 18, 2011 and the date of this decision. *See Mata*, 2015 WL 3457293, at *4 (collecting cases directing the production of names and contact information in similar circumstances).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification is denied without prejudice to its renewal upon a more developed record. *Mata*, 2015 WL 3457293, at *5. However, Defendants are directed to produce to Plaintiffs the contact information for all fry woks and miscellaneous workers employed by Defendants dating back to April 18, 2011. Counsel for all parties are directed to appear for an in-person conference before the undersigned at the United States Courthouse, 300 Quarropas Street, Courtroom 421, White Plains, New York 10601 on March 14, 2018 at 1:00 p.m. The Clerk is respectfully requested to terminate the pending motion. (Docket No. 39).

Dated: February 21, 2018
        White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge