UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
SHANFA LI, *on behalf*
*of himself and others similarly situated*,

                          Plaintiff,

            -against-

CHINATOWN TAKE-OUT INC.,
d/b/a/ China Town Take Out; and
YECHIEL MEITELES,
                          Defendants.
-----------------------------------------------------X

**OPINION AND ORDER**

16 Civ. 7787 (JCM)

       On September 29, 2016, Plaintiff Shanfa Li ("Li") brought this action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against Chinatown Take-Out Inc. and Yechiel Meiteles ("Defendants").[1] (Docket No. 1).  On November 29, 2016, Plaintiff Guiming Shao ("Shao") filed a consent to become a plaintiff. (Docket No. 7). Defendants filed an Answer to the Complaint denying all the claims. (Docket No. 22).  On August 22, 2018 and August 27, 2018, the undersigned presided over a bench trial during which the parties were afforded a full opportunity to be heard.  After due deliberation, it is hereby ordered and adjudged that the following constitute this Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

# I.  FINDINGS OF FACT

## A.  The Parties

       Defendant Chinatown Take-Out, Inc. ("Chinatown Take-Out"), a New York corporation, is located at 455 Route 306, Wesley Hills, New York 10952. (JPTO[2] at 3).  Chinatown Take-Out

---

[1] This action is before the undersigned for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 36).

[2] Refers to the Joint Pretrial Order, which contains the parties' factual stipulations. (Docket No. 71).

is a business engaged in interstate commerce that has gross sales in excess of $500,000 per year. (*Id.*).

Defendant Yechiel Meiteles ("Meiteles") was the owner of Chinatown Take-Out during the relevant time period. (JPTO at 3). As such, he had the power to hire and fire employees. (*Id.*). Meiteles was also responsible for paying Plaintiffs Shao and Li (collectively "Plaintiffs") their wages. (*Id.*).

Plaintiff Shao worked for Defendants from June 24, 2011 to November 3, 2016 as a cook at Chinatown Take-Out. (JPTO at 4; Trial Tr.[3] at 78, 96).

Plaintiff Li worked for Defendants from August 25, 2015 to August 31, 2016, as a kitchen helper at Chinatown Take-Out, (JPTO at 3; Trial Tr. at 145). Thus, Li worked a total of fifty-three weeks. (Trial Tr. at 167).

Both Shao and Li did not speak, read, or understand English during their employment at Chinatown Take-Out. (Trial Tr. at 146, 189, 208–09). Plaintiffs communicated with Meiteles through Tung Cheung ("Tom"),[4] the chef for Chinatown Take-Out, who acted as their translator. (*Id.* at 157–58, 242).

**B. Plaintiffs' Work Hours**

Plaintiffs were required to work from 11:00 a.m. to 8:00 p.m., Sundays through Thursdays, and 11:00 a.m. to 2:00 p.m. on Fridays. (Trial Tr. at 12–18, 187, 207, 213). Plaintiffs lived with Tom. (*Id.* at 18). Tom stayed at the restaurant until closing at 10:00 p.m., and drove Plaintiffs home each night. (*Id.* at 13, 54–55, 131, 149). As a result, Plaintiffs often stayed at Chinatown Take-Out until 10:00 p.m. (*Id.* at 86, 136, 150, 153, 162). However, Plaintiffs were

---

[3] Refers to the trial transcript.

[4] Tom was known to Plaintiffs as "Ah Tung." (Trial Tr. at 78).

not required to work past 8:00 p.m. (*Id.* at 16, 187, 213–15). In fact, Yechiel Meiteles told Tom that Plaintiffs were not permitted to work beyond 8:00 p.m. (*Id.* at 213–14). When Li was asked whether he had any discussion with Meiteles regarding his work schedule, Li explained that he could not communicate with Meiteles, so he relied on Tom, who told him that his hours were 11:00 a.m. to 10:00 p.m. (*Id.* at 146–47). Meiteles, however, credibly testified that he had no knowledge that Plaintiffs worked beyond 8:00 p.m. (*Id.* at 215).

Given this, the Court finds that Plaintiffs' weekly compensable work hours were 11:00 a.m. to 8:00 p.m., Sundays through Thursdays, and 11:00 a.m. to 2:00 p.m. on Fridays.

## C. Meals

Plaintiffs usually ate three meals each day (except Friday) while working at Chinatown Take-Out. (Trial Tr. at 95, 160). The parties, however, presented conflicting testimony regarding the duration of Plaintiffs' meals. Specifically, Shao and Li testified that they ate each meal inside the restaurant in about five to eight minutes and received no other breaks. (*Id.* at 95, 160). Yehuda Meiteles, a former manager at the restaurant and one of Yechiel Meiteles' sons, testified that Shao and Li spent about thirty minutes eating lunch daily. (*Id.* at 187). Yechiel Meiteles testified that Plaintiffs spent around an hour eating lunch, (*id.* at 216), but that Shao and Li were required to be in the restaurant from 11:00 a.m. to 8:00 p.m. at all times, (*id.* at 225–26). While Yechiel Meiteles claimed that Plaintiffs were not required to work during their lunch and dinner breaks, (*id.* at 253–54), he testified that he did not observe Plaintiffs taking their breaks every day, (*id.* at 256). Shao further testified that if a job needed to be done during one of his meal breaks, he had to stop eating and complete the task. (*Id.* at 96).

After consideration of the record, the Court believes both parties were exaggerating the length of Plaintiffs' meal breaks and concludes that the actual time spent on meals was somewhere in between. Therefore, the Court finds that: (i) Plaintiffs spent approximately twenty

minutes eating each meal, (ii) Plaintiffs were not permitted to leave Chinatown Take-Out during a meal break, and (iii) Plaintiffs were required to stop eating if a task needed to be completed in the restaurant.

**D.  Holidays**

Chinatown Take-Out was closed for business on the Jewish holidays. (Trial Tr. at 183–84, 211).  However, both Shao and Li testified that they worked on every Jewish holiday cleaning the restaurant. (*Id.* at 131,166, 174).  The Court, however, finds this portion of their testimony incredible.  Chinatown Take-Out is a Glatt Kosher restaurant centrally located in an ultra-Orthodox Jewish community. (*Id.* at 183–84, 211).  If the restaurant was open or even had its lights on during a holiday, it would lose its Glatt Kosher license. (*Id.*).  In addition, no one can enter the restaurant without supervision by someone with knowledge of the Glatt Kosher laws, (*id.* at 222), and Orthodox Jews do not work or travel on holidays as it is strictly forbidden, (*id.* at 183).  Moreover, Defendant hired a professional Kosher cleaning company to do heavy duty cleaning of the restaurant on a regular basis. (*Id.* at 218).  Thus, the Court finds that Chinatown Take-Out was closed forty-one days each year for the Jewish holidays. (*Id.* at 214).  The Court further finds that Plaintiffs were not required to work on those days.

**E.  Plaintiffs' Wages**

**1.  Li**

Li was promised a salary of $650 per week. (JPTO at 3).  Li was paid in cash, did not receive tips, and did not receive a paystub. (*Id.* at 4).  The parties stipulated that Li received 42 payments of $650, totaling $27,300. (*See* JPTO at 3–4); (Trial Tr. at 170) ("I'll stipulate that the amount stipulated to is equal to the amount that he would have received for 42 payments of

650.").[5] In addition, when Li gave Defendants notice that he planned to leave Chinatown Take-Out, Defendants paid him $3,200. (Trial Tr. at 165). He later received an additional $2,000. (*Id.*). Thus, the Court finds that Li was paid a total of $32,500 during the course of his employment at Chinatown Take-Out, out of the $34,450 in regular wages owed to him for fifty-three weeks of work.[6]

## 2. Shao

Shao was paid $3,000 each month in three installments of $1,000. (Trial Tr. at 90, 128). Defendants also paid Shao in cash. (JPTO at 3). Shao testified that he was not always paid on time. (Trial Tr. at 91, 120). According to Shao, Defendants owed him $11,300 when he left his position at Chinatown Take-Out. (*Id.* at 100). Shao submitted as proof a handwritten note prepared by Tom and Yehuda Meiteles on November 6, 2016 that he, Yehuda Meiteles, and Tom signed.[7] (*Id.* at 100, 121, 189, Plaintiffs' Exhibit 1). Shao testified that Tom informed him that the paper indicated the amount he was owed at the time he quit.[8] (Trial Tr. at 138–39).

Yehuda Meiteles testified, on the other hand, that this piece of paper corroborated his position that the two circled numbers—$7,500 and $3,800—was the amount that he tendered to Shao on November 6, 2016. (Trial Tr. at 189). Yehuda Meiteles further stated that he wrote "not official with bookkeeper[]" because he had not yet told the bookkeeper that he, in fact, paid Shao $11,300. (*Id.*). At the time, Shao could not read English, so he did not understand what the

---

[5] In the Joint Pretrial Order, the parties list two payments of $1,300 on September 18, 2015. (*See* JPTO at 3–4). The two payments of $1,300, however, are consistent with the stipulation at trial that Li was paid $27,300 for 42 weeks of work.

[6] Although Plaintiffs were not required to work on the Jewish holidays, Defendants paid them for those days. (Trial Tr. at 214).

[7] Plaintiffs' Exhibit 1 was admitted into evidence without objection. (Trial Tr. at 98-99).

[8] This testimony was admitted into evidence without objection. (Trial Tr. at 105-06). Even so, the Court may consider this statement under the present sense impression hearsay exception. (*See* Fed. R. Evid. 803(1)).

notation about the bookkeeper signified. (*Id.* at 77). Yehuda Meiteles testified that he paid Shao by giving Tom money inside a sealed envelope to give to Shao, (*id.* at 196–97), which his father prepared, (*id.* at 246–47). Yehuda Meiteles further said that he never looked inside the envelope and did not know how much each worker was going to be making. (*Id.* at 196–97, 201–03).

Shao later clarified that Defendants paid him basically everything he was owed in regular wages up until May of 2016. (Trial Tr. at 122–24). Shao did not remember how much he was paid between May and November of 2016, but he claims it was not the agreed-upon amount of $3,000 per month. (*Id.* at 125). Four months prior to leaving Chinatown Take-Out, Shao complained to Tom that he was not being paid in full. (*Id.* at 130). Shao did not want to continue working at Chinatown Take-Out, but stayed at Tom's request. (*Id.*). Shao further clarified that he was not paid anything in the three months prior to leaving Chinatown Take-Out. (*Id.* at 128).

## F. Defendants' Record Keeping

Defendants did not provide Shao or Li with anything in writing that set out their hours or wages. (Trial Tr. at 98, 146–47, 163). Defendants also did not provide Plaintiffs with formal wage notices at the beginning of their employment or pay stubs throughout their employment. (*See* Trial Tr. at 97-98, 147; JPTO at 4).

Further, Defendants did not record Plaintiffs' working time internally. (Trial Tr. at 137, 153). Employees at Chinatown Take-Out filled out time cards to record their hours worked. (*Id.* at 195-96, 228). However, kitchen staff, including Plaintiffs, did not fill out these time cards. (*Id.* at 196, 228). Yechiel Meiteles testified that he recorded Plaintiffs' salaries in his "book," but this record was not admitted into evidence. (*Id.* at 228, 266–68).

## II.  BURDEN OF PROOF

"The FLSA and the NYLL both 'guarantee[ ] compensation for all work . . . engaged in by [covered] employees." [9] *Salinas v. Starjem Rest. Corp.*, 123 F.Supp.3d 442, 472 (S.D.N.Y. 2015) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 359 (2d Cir. 2011)).  "Under the FLSA, an employee bears the burden of proving that he was not properly compensated for his work." *Adonias v. Al Horno Lean Mexican Kitchen Inc.*, No. 16-CV-07266(LTS)(KHP), 2018 WL 4007643, at *7 (S.D.N.Y. Aug. 22, 2018).  However, when an employer fails to keep accurate and complete records of the hours employees work and the amounts they are paid, courts apply the burden-shifting framework set out in *Anderson v. Mt. Clemens Pottery Co.* to determine whether an employee has established that he was underpaid, and what damages he suffered. 328 U.S. 680, 686–87 (1946) (superseded on other grounds); *see, e.g, Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 497–98 (S.D.N.Y. 2017) (using the *Anderson* burden shifting analysis).  Under this framework, a plaintiff-employee satisfies this burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 371 (S.D.N.Y. 2014) (quoting *Anderson*, 328 U.S. at 686-87) (internal quotations omitted).  "This burden is 'not high' and may be met 'through estimates based on [the employee's] own recollection.'" *Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016) (quoting *Kuebel*, 643 F.3d at 362).

If an employee meets this standard, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negat[e] the

---

[9] There is no dispute that Defendants were "employers" and Plaintiffs were covered "employees" under the FLSA and NYLL. (*See* JPTO, at 3–4).

reasonableness of the inference." *Hernandez*, 2016 WL 3248493, at *27 (quoting *Anderson*, 328 U.S. at 687–88). "If the employer fails to do so, the court may enter judgment in the employee's favor, using [his] recollection to determine damages, 'even though the result be only approximate.'" *Lanzetta v. Florio's Enterprises, Inc.*, 763 F. Supp. 2d 615, 618 (S.D.N.Y. 2011) (quoting *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997)).

The NYLL applies a similar standard to unpaid compensation claims. *See Garcia v. JonJon Deli Grocery Corp.*, No. 13 Civ. 8835 (AT), 2015 WL 4940107, at *4 & n.8 (S.D.N.Y. Aug. 11, 2015) ("Courts use the same burden-shifting framework to determine liability for unpaid overtime under the NYLL."). Under the NYLL, however, an employer who fails to keep accurate records bears a more demanding burden of proof. *Gamero*, 272 F. Supp. 3d at 498. Specifically, Section 196-a of the NYLL provides that "where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Id.* (quoting NYLL § 196-a(a)). Further, "the NYLL— unlike the FLSA—does not permit an employer to discharge this burden by undermining the reasonableness of an employee's evidence that he was underpaid." *Id.*

Under this framework, the Court assesses whether Plaintiffs are entitled to damages for unpaid regular and overtime wages.

## III. CONCLUSIONS OF LAW

### A. Unpaid Regular Wages

Both state and federal law mandate that employees be paid *at least* minimum wage for the first forty hours worked in a given work week. 29 U.S.C. § 206(a); N.Y. Comp. Codes R. & Regs. Tit. 12; NYLL § 652(1). However, the two statutory regimes differ with respect to the amount of damages available to a prevailing plaintiff. *See Chun Jie Yin v. Kim*, No. 07 CV 1236

(DLI) (JO), 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008). Under federal law, "[t]he FLSA

allows recovery for unpaid 'straight' time only up to the minimum wage rate." *Villar v. Prana

Hosp., Inc.*, No. 14 Civ. 8211(RA)(JCF), 2017 WL 1333582, at *4 (S.D.N.Y. Apr. 11, 2017),

*report and recommendation adopted*, 14 Civ. 8211(RA)(JCF), 2018 WL 3579841 (S.D.N.Y. July

25, 2018) (quoting *Kernes v. Global Structures, LLC*, No. 15 Civ. 659, 2016 WL 880199, at *3

(S.D.N.Y. March 1, 2016)). The NYLL, on the other hand, permits plaintiffs to recover the full

amount of their agreed-upon wages as a remedy to a substantive violation of Article 6 of the

NYLL. *See id.* (citing NYLL§§ 191(1), 198(3)).

While Section 198 of the NYLL does not provide an independent cause of action, it "sets

forth the remedies available in 'actions for wage claims founded on the substantive provisions of

the Labor Law [A]rticle 6.'" *Alter v. Bogoricin*, No. 97 Civ. 0662 (MBM), 1997 WL 691332, at

*13 (S.D.N.Y. Nov. 6, 1997) (quoting *Gottlieb v. Kenneth D. Laub & Co.*, 605 N.Y.S.2d 213,

217 (1993)). More specifically, Section 198(3) permits employees "to recover full wages . . .

accrued during the six years previous to commencing of such action." § 198(3). Courts in this

Circuit use Section 198(3) to award prevailing plaintiffs damages for unpaid regular wages at

their agreed-upon hourly rate. *See Villar*, 2017 WL 1333582, at *4 (collecting cases using §

198(3) to award full agreed-upon wages); *Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812

(RER), 2015 WL 1966355, at *42 (E.D.N.Y. May 1, 2015) ("The NYLL expressly provides that

employees are entitled to recover all unpaid wages.") (citing § 198(3)); *Kalloo v. Unlimited

Mech. Co. of NY*, 977 F. Supp. 2d 187, 205-06 (E.D.N.Y. 2013) (awarding plaintiffs straight time

unpaid wages at their agreed-upon hourly rate) (citing § 198(3)); *Denoyer v. PMI Sec. Prot. Inc.*,

No. 15 Civ.4834(KMK)(JCM), 2018 WL 1738217, at *4 (S.D.N.Y. Jan. 23, 2018), *report and

recommendation adopted*, No. 15 Civ.4834(KMK)(JCM), 2018 WL 1737154 (S.D.N.Y. Apr. 9,

2018) (relying on § 198(3) to award plaintiff unpaid regular wages at the agreed-upon hourly rate after a finding of liability on default). However, a claimant is entitled to recover his full agreed-upon wages as permitted by §198(3) "*only* when [he] has established a violation of his rights under a substantive portion of Article 6," such as the NYLL minimum wage provision set forth in NYLL Section 652. *Malinowski v. Wall St. Source, Inc.*, No. 09 CIV. 9592 (PAE), 2012 WL 279450, at *2 (S.D.N.Y. Jan. 31, 2012) (emphasis in original). Therefore, once a wage violation is established under New York law, a court may award a plaintiff his full agreed-upon wages, "to ensure that working people are paid what they earn."[10] 1997 N.Y. Laws ch. 605, § 1 (detailing the legislative intent of Section 198).

Further, an FLSA wage claim does not "preempt" a wage claim brought under state law. *Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (internal citation removed), *report and recommendation adopted*, No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2038973 (S.D.N.Y. May 24, 2011). "[A] plaintiff may recover under whatever statute provides the highest measure of damages." *Id.* Here, the Court need only address Plaintiffs' claims under the NYLL because the NYLL provides the full amount of wages owed, which is more than the statutory minimum wage allowed under the FLSA. *See* NYLL §

---

[10] In contrast, the court in *Contrera v. Langer* found that Section 198(3) neither confers an independent cause of action under Article 6, nor permits an employee to recover remedial damages at a rate higher than the minimum wage for an unpaid wage claim. 314 F. Supp. 3d 562, 570 (S.D.N.Y. 2018). There, the court relied on the New York Court of Appeals case *Gottlieb v. Kenneth D. Laub & Co.*, which held that the attorneys' fees remedy in Section 198(1-a) did not apply where the employee's substantive claim arose under a common law breach of contract theory rather than one of the substantive provisions of Article 6 of the NYLL. 605 N.Y.S.2d 213, 216-17 (1993). While this Court agrees that Section 198(3) does not confer a stand-alone cause of action under the NYLL, nor does it apply to a breach of contract claim, this Court respectfully disagrees that the NYLL bars employees from recovering their full agreed-upon wages if a court finds a wage violation grounded in a substantive provision of NYLL Article 6. This conclusion is consistent with *Gottlieb's* holding that the remedies within Section 198 are only available for substantive violations of the NYLL. 605 N.Y.S.2d at 217. Furthermore, this finding comports with the legislative intent of the Unpaid Wages Prohibition Act ("UWPA"), which amended Section 198 to include the current language of subsection (3). *See* 1997 N.Y. Laws ch. 605, § 1 (stating that the purpose of the statute is to provide "working people with stronger and more varied tools with which to collect unpaid wages" because "too often the working people of [New York] do not receive the *full wages they have earned*.") (emphasis added).

198(3); *Martinez v. Dannys Athens Diner Inc.*, No. 16-CV-7468 (RJS), 2017 WL 6335908, at *3 (S.D.N.Y. Dec. 5, 2017) ("Where, as here, a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award damages 'under the statute providing the greatest amount of relief.'") (quoting *Gamero*, 272 F. Supp. 3d at 498).

## 1. Li

In light of the applicable burden shifting framework and factual findings, the Court concludes that Plaintiff Li is entitled to $1,950 in unpaid regular wages.

As an initial matter, the parties stipulated that Li received 42 of the 53 weekly payments owed to him—totaling $27,300 ($650 x 42). (Trial Tr. at 170). Further, Li testified that Defendants gave him an additional $5,200 after he informed them that he planned to leave Chinatown Take-Out. (*Id.* at 165). Thus, Li received at least $32,500 of the $34,450 owed to him for fifty-three weeks of work—leaving a balance of $1,950. The parties, however, disagree as to whether Defendants compensated Li for the remainder of the wages owed to him.

The Court resolves this disagreement in Li's favor. Li credibly testified that Defendants did not pay him his weekly wage on multiple occasions towards the latter half of his employment, which he raised with Meiteles through Tom. (Trial Tr. at 157–58, 242). Li additionally provided an estimate of the amount that Defendants owed him, which he wrote down in a pay schedule that he created.[11] (*See* Trial Tr. at 154–55); *Kalloo v. Unlimited Mech. Co. of NY*, 977 F. Supp. 2d 187, 200 (E.D.N.Y. 2013) (concluding that plaintiff satisfied his burden of proof through plaintiff's own estimates of unpaid straight time and overtime pay).

Defendants did not record, note, or otherwise memorialize Plaintiffs' hours worked or compensation. (*See* Trial Tr. at 227–28). While Meiteles claims that he wrote down Plaintiffs'

---

[11] This pay schedule was admitted into evidence without objection as Plaintiffs' Exhibit 4.

hours worked in his "book," Defendants failed to produce or admit this document into evidence. (*Id.*). Given Defendants' record-keeping deficiencies, Li has met his initial burden in establishing that Defendants failed to pay him his wages on three occasions, which Defendants now bear the burden of negating.[12] *See Cuahua v. Tanaka Japanese Sushi Inc.*, No. 14 Civ. 4177 (ER), 2017 WL 4357980, at *5 (S.D.N.Y. Sept. 29, 2017) (shifting burden to defendants to show that they complied with the time and wage documentation requirements under the FLSA and NYLL).

In response, Defendants have not provided sufficient evidence to undermine the reliability of Li's testimony. Rather, Defendants argue that: (i) because Li received $2,000 and a document that stated "balance" at the end of his employment, he implicitly agreed that he was not owed any additional regular wages, (*see* Def. Post-Trial Mem.,[13] Docket No. 77, at 19); (ii) Li would not have waited so long before quitting if he was truly owed back wages, (*see id.*, at 20); and (iii) someone paid Li the remaining wages while Meiteles was in Israel, (*see id.*, at 18). These assertions fail to provide required "evidence of the precise amount of work performed" to negate the reasonableness of Li's credible recollection of the wages that he is owed. *Hernandez*, 2016 WL 3248493, at *27 (quoting *Anderson*, 328 U.S. at 687–88); *see Salinas*, 123 F. Supp. 3d 472–73 (accepting plaintiffs' estimates of unpaid work because defendants failed to produce evidence of the precise amount of work performed). Further, "[i]f an employer cannot satisfy its burden under the FLSA, it cannot satisfy the 'more demanding burden' of the NYLL." *Canelas*

---

[12] The Court, however, does not credit Li's testimony that he is owed $3,900 in unpaid regular wages. (*See* Trial. Tr. at 159). By adding the 42 weekly $650 payments with $5,200, the amount that Li admitted receiving from Defendants at the end of his employment, the facts establish that, at most, Li is owed $1,950 in unpaid wages. Plaintiffs' argument that Li was owed $9,100 prior to receiving the two lump payments at the end of his employment is without merit, (*see* Pl. Post-Trial Mem., Docket No. 76, at 7-8), since the parties stipulated that Li received 42 of the 53 weekly $650 payments, or $27,300 out of the $34,450 owed to him.

[13] Refers to Defendants' Post-Trial Memorandum filed on September 12, 2018.

*v. World Pizza, Inc.*, No. 14 Civ. 7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017)

(quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 & n.15 (S.D.N.Y. 2005)).

Accordingly, the Court concludes that Defendants failed to pay Li his regular wages on

three occasions—thereby violating New York's minimum wage provision.  NYLL § 652.

Consequently, Li is entitled to $1,950 in unpaid regular wages.

**2. Shao**

Shao is entitled to $11,300 in unpaid regular wages for the reasons that follow.  First, the

trial testimony demonstrates that there is no dispute that Defendants owed Shao $11,300 in

unpaid regular wages on November 6, 2016. (*See* Trial Tr. at 100–01, 189).  This figure

represents the sum of the two circled numbers on Plaintiffs' Exhibit 1, the handwritten document

signed by Shao, Yehuda Meiteles, and Tom. (*Id.*).  The parties, however, disagree, as to whether

this amount was tendered to Shao on November 6, 2016.

Second, Shao consistently and credibly testified that Defendants did not pay him $11,300

in regular wages on November 6, 2016, or anytime thereafter.  While Shao cannot recall the

exact amounts that Defendants failed to pay him on a month-by-month basis, his estimate is

corroborated by the circled numbers on Plaintiffs' Exhibit 1, which Shao reasonably believed to

represent the amount that accrued in unpaid wages between May and November 2016. (Trial Tr.

at 100, 121, Plaintiffs' Exhibit 1).  Further, Shao credibly testified that he was not paid at all for

three months prior to leaving Chinatown Take-Out, (Trial Tr. at 128), which would violate New

York's minimum wage provision. NYLL § 652.  Given this, the Court concludes that Shao

established a "just and reasonable inference" that Defendants owed, and did not pay, Shao

$11,300 in regular wages. *See Marcelino v. 374 Food, Inc.*, No. 16 Civ. 6287 (KPF), 2018 WL

1517205, at *18 (S.D.N.Y. Mar. 27, 2018) (inferring violations of the NYLL through crediting

plaintiff-employee's sworn statement that he was underpaid by defendant-employer).

Third, Defendants failed to sufficiently rebut Shao's credible testimony. The Court finds Yehuda Meiteles' testimony regarding Plaintiffs' Exhibit 1 lacking. Specifically, the Court does not credit Yehuda Meiteles' explanation that he wrote "not official with bookkeeper[]" because he paid Shao $11,300, but had not yet informed the bookkeeper. (Trial Tr. 189). This notation could indicate the opposite—that the parties agreed Shao was owed $11,300, but Yehuda Meiteles had to confirm the amount with the bookkeeper prior to payment. Further, because Yehuda Meiteles admitted that he never looked inside the envelopes that Defendants used to pay Shao his wages, he lacks the requisite personal knowledge to sufficiently contradict Shao's testimony that he was not paid $11,300. (*Id.* at 203).

Accordingly, the Court concludes that Shao is entitled to $11,300 in unpaid regular wages.

**B. Overtime Hours**

Both the FLSA and the NYLL provide for recovery of unpaid overtime wages. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. While both statutes hold that overtime wages are paid at the rate of one and one-half times the "regular rate of pay," each set forth different methods of calculating the regular rate of pay. *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016). Pursuant to the FLSA, "the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113 (2016). Under the NYLL, "the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5 (2016).

Similar to claims for unpaid regular wages, courts do not grant duplicative awards for overtime pay under both the FLSA and NYLL to prevent plaintiffs from a double recovery for

the same loss. *E.g., Quiroz*, 2016 WL 2869780, at *3. If a plaintiff is "entitled to damages under both federal and state wage law, the Court has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief." *Gamero*, 272 F.Supp.3d at 498 (internal quotations omitted). To avoid a double recovery, and because Plaintiffs' NYLL claims "subsume their award under the FLSA" given the longer statute of limitations, the Court will calculate Plaintiffs' recovery for unpaid overtime under the NYLL. *Hernandez*, 2016 WL 3248493, at *31.

The Court conducts its analysis under the burden shifting scheme, and concludes that Defendants violated the NYLL by failing to compensate Plaintiffs for overtime worked during the course of their employment. *See Gamero*, 272 F. Supp. 3d at 504–05 (applying the burden shifting framework to claims of unpaid overtime). Generally, Plaintiffs worked from 11:00 a.m. to 8:00 p.m. Sunday through Thursday, and 11:00 a.m. to 2:00 p.m. on Friday—totaling 48 hours per week.[14] Plaintiffs did not receive overtime pay for the eight additional hours they worked each week as required by the NYLL. Rather, Plaintiffs received fixed salaries that did not vary according to the hours Plaintiffs worked each week. *See Pineda v. Frisolino, Inc.*, No. 15 Civ. 3774 (GBD), 2017 WL 3835882, at *10 (S.D.N.Y. Aug. 29, 2017) (concluding after a bench trial that because "Plaintiffs received fixed weekly salaries . . . which did not vary according to the hours actually worked each week," Plaintiffs were owed overtime damages for any weekly hours worked above forty).

Furthermore, Defendants did not offer any credible evidence that there was an agreement or understanding that Plaintiffs' salaries were intended to cover overtime hours. Both the "FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty

---

[14] The only exception to this was when Chinatown Take-Out was closed for a religious holiday, which the Court will address *infra*.

-15-

hours, unless the parties have an alternate agreement." *Pinovi v. FDD Enterprises, Inc.*, No. 13-Civ. 2800(GBD)(KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015). However, an agreement that a fixed weekly salary covers more than forty hours per week will comply with the FLSA and NYLL only if there is an "explicit understanding" between the employee and employer. *Amaya v. Superior Tile & Granite Corp.*, 10 Civ. 4525(PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012). Here, the facts adduced at trial do not establish an explicit understanding that either Li or Shao's salary covered overtime work. In fact, by arguing that Plaintiffs only worked, at most, forty hours per week, Defendants implicitly conceded that Plaintiffs' salaries were only intended to cover forty hours of work per week. (*See* Def. Post-Trial Mem., Docket No. 77, at 13). Accordingly, Plaintiffs are entitled to overtime compensation for any hours they worked over 40 hours per week.

Concluding that Defendants failed to pay Plaintiffs their overtime wages, the Court turns to the calculation of Plaintiffs' overtime damages under the NYLL by first determining Plaintiffs' hourly rate. Here, Li's regular hourly rate was $16.25. The Court arrives at this figure by dividing Li's weekly salary, $650, by 40, which is the lesser of 40 hours and the actual number of hours that Li worked. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5 (2016). Accordingly, Li's overtime rate of pay is $24.38 per hour ($16.25 x 1.5). Shao's hourly rate is more difficult to quantify because he received a monthly salary in three installments. The Court, however, concludes that his hourly rate was $17.32 per hour. The Court arrives at this figure by dividing Shao's monthly salary, $3,000, by the average number of weeks per month, 4.33,[15] to reach a weekly salary of $692.84, and further dividing that figure by 40, which is the lesser of 40

---

[15] The Court reaches this figure by dividing the number of weeks per year (52) by the number of months per year (12).

hours and the actual number of hours that Shao worked.[16] *See id.* Therefore, Shao's overtime rate of pay is $25.98 per hour ($17.32 x 1.5).

The Court next addresses the number of compensable overtime hours. Plaintiffs claim that they worked 58 hours each week and therefore seek 18 hours of weekly overtime pay. (Pl. Post-Trial Mem.,[17] Docket No. 76, at 11). They reach this figure by claiming that Defendants should compensate them for work performed from 8:00 p.m. to 10:00 p.m. Sunday through Thursday. (*Id.*). However, Defendants credibly testified that they lacked actual or constructive knowledge that Plaintiffs worked from 8:00 p.m. to 10:00 p.m. (*See* Trial Tr. at 187, 213–15). As a result, Plaintiffs are not entitled to overtime pay for work performed between 8:00 p.m. and 10:00 p.m. Sunday through Thursday. *Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012) (stating that to establish liability for unpaid overtime "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.") (summary order) (quoting *Kuebel*, 643 F.3d at 361). Accordingly, the Court finds that Plaintiffs worked 48 hours per week, so they are entitled to eight hours of overtime per week, less any particularized deductions.

Furthermore, the Court does not discount Plaintiffs' compensable hours worked by their meal breaks. (*See* Def. Post-Trial Mem., Docket No. 77, at 13). As an initial matter, Defendants cannot treat meals breaks as compensable time during Plaintiffs' employment, (*see* Trial Tr. at 213-14), then claim *ex post facto* that they may offset their liability using the same, *see Alonso v.*

---

[16] Plaintiffs claim that Defendants never gave them notice that the money Defendants paid for their room and board would be taken as a credit against their wages. (Pl. Post-Trial Mem., Docket No. 76, at 8). This is of no moment because the Court does not consider these rent payments part of Plaintiffs' wages in calculating their regular rate of pay as there is insufficient evidence to establish that Defendants paid their rent, or that such payments were intended to be part of their wages. (*See* Trial Tr. at 94-95; 159-60).

[17] Refers to Plaintiffs' Post-Trial Memorandum filed on September 12, 2018.

*144 Ninth Gotham Pizza, Inc.*, No. 12-CV-3133 (DLC), 2016 WL 4257526, at *2 (S.D.N.Y. Aug. 10, 2016) ("Allowing an employer to treat meal breaks as compensable time but then claim an *ex post facto* credit invites fraud and undermines the goals of the federal and New York labor laws."). While the Second Circuit has not yet addressed this issue, holding otherwise creates a condition in which "neither the employer nor the employee has an incentive to monitor and record the use of that time, or to take timely and appropriate action to enforce the employer's policy." *See id.*, at *2. Such a rule would run counter to the NYLL's provisions promoting employers to give their employees notice of their rights. *Id.* at 2–3 (citing NYLL's wage notice and pay stub requirements).

Moreover, Plaintiffs' compensable hours cannot be discounted by their meal breaks because they were not bona fide. *See Hernandez*, 2016 WL 3248493, at *27 ("Under both the FLSA and NYLL, 'all of the time worked during a continuous workday is compensable, save for bona fide meal breaks.'") (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 475 (S.D.N.Y. 2014)). "To qualify as a bona fide meal period, '[t]he employee must be completely relieved from duty for the purposes of eating regular meals.'" *Marcelino*, 2018 WL 1517205, at *17 (quoting *Salinas*, 123 F.Supp.3d at 472). Here, the Court finds that Plaintiffs were not completely relieved from their work duties because they were both required to stay in the restaurant during meal breaks, and they had to stop eating if a task needed to be completed. *See Xiao Dong Fu v. Red Rose Nail Salon Inc.*, No. 15 Civ. 7465 (KPF), 2018 WL 1472508, at *7 (S.D.N.Y. Mar. 26, 2018) (finding that "touch-and-go break periods" were not bona fide meal breaks). In addition, Plaintiffs' twenty minute meal breaks were not long enough to be considered bona fide. *See Gamero*, 272 F. Supp. 3d at 499 (concluding that "[o]rdinarily 30

minutes or more is long enough for a bone fide meal break.") (citing *Salinas*, 123 F. Supp. 3d at

472). Therefore, the Court has not discounted Plaintiffs' work hours by their meal periods.

The Court further finds Plaintiffs' testimony regarding work performed on Jewish

holidays not credible. Specifically, the Court finds that Chinatown Take-Out was closed to both

customers and employees on approximately 41 days per year in observance of the Jewish

holidays. The Court bases this off the Jewish holiday calendar admitted into evidence,

(Defendants' Exhibit A), as well as Defendants' credible testimony that the restaurant must be

closed on those days in accordance with its Glatt Kosher license, (Trial Tr. at 131, 166, 174).

Therefore, in determining unpaid compensable overtime, the Court has reduced

Plaintiffs' hours by the number of hours that Chinatown Take-Out was closed during the Jewish

holidays. After subtracting these hours, the Court concludes that Shao worked 1,728 hours of

unpaid compensable overtime over the course of his employment at Chinatown Take-Out from

2011 through 2016,[18] and Li worked 334 hours of unpaid compensable overtime from 2015

through 2016.[19] Given these determinations, and pursuant to the NYLL methodology of

calculating the amount of overtime owed to an employee, Shao is entitled to $44,893.44 for

unpaid overtime wages between 2011 and 2016, and Li is entitled to $8,142.92 for unpaid

overtime wages between 2015 and 2016.

---

[18] The Court notes that Shao testified that Defendants were "basically" up-to-date on his wages until the beginning of May 2016. (Trial Tr. at 124-28). However, this statement was given within the context of gauging when Defendants fell behind on unpaid regular wages. As such, the Court does not construe Shao's statement to mean that Defendants were up-to-date on his overtime earnings up to May 2016.

[19] The Court accepts Defendants' representations of the days and hours that Chinatown Take-Out was closed in observance of a religious holiday from 2011-2016 in their post-trial memorandum based on Defendants' Exhibit A. (*See* Def. Post-Trial Mem., Docket No. 77, at 5-13). Accordingly, the Court finds Shao worked 209 weeks with 8 hours of unpaid overtime per week, 8 weeks with 5 hours of unpaid overtime per week, and 8 weeks with 2 hours of unpaid overtime per week. Li worked 40 weeks with 8 hours of unpaid overtime per week, 2 weeks with 5 hours of unpaid overtime per week, and 2 weeks with 2 hours of unpaid overtime per week.

## C. Spread of Hours Damages

In addition to unpaid regular and overtime wages, Plaintiffs argue that they are also entitled to "spread of hours" pay. (*See* Compl.,[20] Docket No.1, at ¶ 5). "New York law requires, separate from any unpaid minimum wage or overtime award, that 'an employee whose workday is longer than ten hours must receive one hour's pay at the basic minimum hourly wage rate.'" *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 555 (S.D.N.Y. 2017) (quoting *Galeana v. Lemongrass on Broadway Corp.*, 120 F.Supp.3d 306, 319 (S.D.N.Y. 2014)). To qualify for "spread of hours" pay, courts measure "the interval between the beginning and end of an employee's workday." N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.18.

As previously discussed, both Li and Shao worked, at most, nine consecutive hours in a given work day. Because the Court finds that neither plaintiff worked a shift longer than ten hours, they are not entitled to "spread of hours" pay.

## D. NYLL Statutory Damages

Plaintiffs also seek statutory damages pursuant to the NYLL wage notice and wage statement requirements. (*See* Compl., Docket No. 1, at ¶ 5).

### 1. The Wage Notice Requirement

NYLL Section 195(1) "requires employers to provide employees, at the time of hiring, with a wage notice containing basic information such as rate of pay; prior to February 27, 2015, employers were required to provide employees with these notices annually."[21] *Pastor v. Alice Cleaners, Inc.*, No. 16-CV-7264 (JLC), 2017 WL 5625556, at *5 (S.D.N.Y. Nov. 21, 2017). The

---

[20] Refers to the Complaint filed on September 26, 2016.

[21] In addition to the basic rate of pay, the wage notice must include information such as the frequency of payment, employment allowances such as tip, meal, or lodging credits, and the employer's contact information, address and telephone number. *See* NYLL § 195(1)(a).

statute requires the employer to provide this information to the employee in writing both in English and in the primary language of the employee. *See* NYLL § 195(1)(a).

"Since February 27, 2015, an employee who was not provided a wage notice within ten business days of the first day of employment can recover damages of $50 for each workday that a violation occurs or continues to occur, not to exceed $5,000." *Java v. El Aguila Bar Rest. Corp.*, No. 16-CV-06691 (JLC), 2018 WL 1953186, at *12 (S.D.N.Y. Apr. 25, 2018) (internal quotation removed). Prior to this amendment, "from April 9, 2011, through February 26, 2015, employers were liable for $50 each week the wage notice was not provided, with a maximum penalty of $2,500." *Adonias*, 2018 WL 4007643, at *10 (citing *Demirovic v. Ortega*, No. 15 CV 327 (CLP), 2018 WL 1935981, at *6 (E.D.N.Y. Apr. 24, 2018)). Further, courts in this Circuit have "held that the amendment should not be given retroactive effect." *Demirovic*, 2018 WL 1935981, at *6.

In the instant matter, Defendants never provided Plaintiffs with the required wage notices. (*See* Trial Tr. at 97, 147). However, Defendants assert there can be no statutory liability because Plaintiffs were paid in full. (*See* Def. Post-Trial Mem., Docket No. 77, at 21-22, 37-38). Defendants' argument is unavailing for the reason set forth herein. *See supra* Sections II(A) and (B). In addition, the record fails to establish any other credible defenses. Therefore, the Court concludes that Defendants violated NYLL's wage notice requirements.

Each Plaintiff, however, is entitled to different amounts of statutory damages under Section 195(1). Li began working for Defendants after a statutory amendment that raised the maximum penalty from $2,500 to $5,000, while Shao began working for Defendants prior to the amendment. As a result, Li is entitled to $5,000 and Shao is entitled to $2,500 in statutory

damages because in both instances the actual accrued damages would far exceed the applicable statutory maximum of possible liability.

## 2. The Wage Statement Requirement

NYLL Section 195(3) provides separate grounds for liability. This section requires that employers:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

NYLL § 195(3). From April 9, 2011 until February 27, 2015, an employee could collect $100 per day in damages with a cap of $2,500 for an employer's wage statement violation. *Java*, 2018 WL 1953186, at *12. Since then, the penalty for violating this statute increased to $250 per workday, but not to exceed $5,000. *Pastor*, 2017 WL 5625556, at *5 (citing NYLL § 198(1-d)).

Here, it is undisputed that Defendants never provided Plaintiffs with the required pay notices or pay stubs. (*See* JPTO, at 4). In response, Defendants put forth the same defense to the wage notice requirement—that Plaintiffs were paid in full. (*See* Def. Post-Trial Mem., Docket No. 77, at 21–22, 37–38). Because the record fails to establish any other defenses, the Court finds that Defendants violated NYLL's wage statement requirements.

Accordingly, both Shao and Li are entitled to recover the full statutory amount of $5,000 under NYLL Section 198(1-d) because neither Plaintiff was provided a pay stub by Defendants for well over twenty work days.

## E. Liquidated Damages

Plaintiffs seek liquidated damages under the FLSA and NYLL. (*See* Compl., Docket No. 1, at ¶¶ 4–5, 47); (Pl. Post-Trial Mem., Docket No. 76, at 10–11).

"An employer who violates the minimum wage and overtime provisions of the FLSA is presumptively liable to the affected employees, in addition to back-pay, for 100% of the unpaid wages as liquidated damages." *Valle v. Gordon Chen's Kitchen LLC,* 254 F. Supp. 3d 665, 677 (S.D.N.Y. 2017) (citing 29 U.S.C. § 216(b)). In order to avoid liability for liquidated damages, the employer must show that that the FLSA violation "was committed 'in good faith and that he had reasonable grounds for believing that his act or omission was not a violation' of the FLSA." *Id.* at 678 (quoting 29 U.S.C. § 260)).

Similarly, NYLL automatically provides for liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1–a); *see Ahmed v. Subzi Mandi, Inc.*, No. 13-CV-3353 (CBA) (RER), 2014 WL 4101224, at *7 (E.D.N.Y. May 27, 2014) (concluding that plaintiffs were "automatically entitled to NYLL liquidated damages unless defendants prove that they acted in good faith"), *report and recommendation adopted*, No. 13-CV-3353 (CBA) (RER), 2014 WL 4101247 (E.D.N.Y. Aug. 18, 2014). Since April 2011, the NYLL damages provision permits a plaintiff to recover 100% of his unpaid wages in liquidated damages. *See Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F.Supp.3d 490, 505 (S.D.N.Y. 2015) (citing NYLL § 198(1–a) as amended before and after Apr. 9, 2011). "The statutory text of the liquidated damages provisions of the present NYLL is not identical to that of the FLSA . . . However, courts have not substantively distinguished the federal standard from the current state standard of good faith." *Id.* (internal citations omitted).

Here, the record is devoid of any argument by Defendants that they believed in good faith that their conduct was not in violation of either the FLSA or NYLL. Rather, Defendants post-trial memorandum simply asserts that there can be no liquidated damages because Plaintiffs were

paid in full. (*See* Def. Post-Trial Mem., Docket No. 77, at 21–22, 37–38). After careful review

of the record and for the reasons set forth herein, (*see supra* Sections II (A) and (B)), the Court

concludes that Plaintiffs' FLSA and NYLL violations were not committed in good faith.

Accordingly, Shao is entitled to liquidated damages in the amount of $56,193.44 and Li

is entitled to liquidated damages in the amount of $10,092.92 —*i.e.*, the amounts of their actual

damages as determined above.[22]

## F. Prejudgment Interest

Plaintiffs seek prejudgment interest under the NYLL on their unpaid regular and overtime

wages.[23] (*See* Compl., Docket No. 1, at ¶¶ 5, 77); (Pl. Post-Trial Mem., Docket No. 76, at 10–

11). "A plaintiff who prevails on a NYLL wage claim is entitled to prejudgment interest on any

'underpayment' of wages." *Salustio*, 264 F. Supp. 3d at 557 (quoting NYLL § 198(1–a)). This

interest, however, does not apply to violations of the wage statement and notice provisions, or for

an award of liquidated damages. *See id.* (awarding prejudgment interest on unpaid wages and

overtime, but not on statutory or liquidated damages).

In New York, prejudgment interest is set at a statutory rate of nine percent per year. N.Y.

C.P.L.R. §§ 5001, 5004. The interest is calculated:

> from the earliest ascertainable date the cause of action existed, except that interest
> upon damages incurred thereafter shall be computed from the date incurred. Where

---

[22] To the extent Plaintiffs seek compounding liquidated damages under both the FLSA and NYLL, it is denied. *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed.Appx. 59, 60 (2d Cir. 2016) (clarifying that amendments to the NYLL have eliminated any reasons to continue awarding duplicative liquidated damages under both the FLSA and NYLL) (summary order); *Cabrera v. 1560 Chirp Corp.*, 15-CV-8194 (TPG)(DF), 2017 WL 1289349, at *8 (S.D.N.Y. Mar. 6, 2017) ("Subsequent to the Second Circuit's decision in *Chowdhury*, courts have declined to award cumulative liquidated damages for unpaid wages on or after April 9, 2011, the effective date of the second amendment to the NYLL ....") *report and recommendation adopted*, 15-CV-8194 (TPG)(DF), 2018 WL 2192187 (S.D.N.Y. May 14, 2018).

[23] Under federal law, prejudgment interest may not be awarded in addition to liquidated damages. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir.1988.). New York law, on the other hand, permits both liquidated damages and prejudgment interest because it "views liquidated damages as punitive, and not compensatory, such that pre-judgment interest is not a duplicative damages award." *Romero v. Rung Charoen Sub, Inc.*, No. 16 CIV. 1239 (VMS), 2017 WL 4480758, at *14 (E.D.N.Y. Sept. 30, 2017).

> such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001.

Here, while the record is unclear exactly when Plaintiffs' claim for unpaid regular wages accrued, their claim for unpaid overtime accrued on their first day of work because Defendants never paid them overtime compensation throughout their employment. Accordingly, the Court adopts the reasonable intermediate date approach. *See Romero v. Rung Charoen Sub, Inc.*, No. 16 Civ. 1239 (VMS), 2017 WL 4480758, at *14 (E.D.N.Y. Sept. 30, 2017) (adopting reasonable intermediate date approach where claim for unpaid overtime wages began on plaintiff's first day of work, but continued to increase throughout his employment).

Using this method, Shao's midpoint date is February 27, 2014 because he worked for Defendants from June 24, 2011 to November 3, 2016. Therefore, Shao is entitled to prejudgment interest at the rate of nine percent per annum, not compounded, on his straight hours and overtime claims totaling $56,193.44 from February 27, 2014 until the date judgment is entered. Similarly, because Li worked for Defendants from August 25, 2015 to August 31, 2016, his midpoint date is February 26, 2016. Therefore, Li is entitled to prejudgment interest at the rate of nine percent per annum, not compounded, on his straight hours and overtime claims, totaling $10,092.92 from February 26, 2016 until the date judgment is entered.

## G. Post-Judgment Interest

Plaintiffs also seek post-judgment interest. (*See* Compl., Docket No. 1, at ¶¶ 4-5). "Unlike prejudgment interest, plaintiffs are entitled to post-judgment interest on all money awards as a matter of right." *Tacuri v. Nithun Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015); *see* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Further, post-

judgment interest is governed by the federal rate set forth in 28 U.S.C. § 1961. *Morales v. Mw Bronx, Inc.,* No. 15-CV-6296 (TPG), 2016 WL 4084159, at *11 (S.D.N.Y. Aug. 1, 2016).

Accordingly, Plaintiffs are entitled to post-judgment interest on all sums awarded, commencing when the Clerk of Court enters judgment until the date of payment.

## H. Attorneys' Fees and Costs

Plaintiffs are entitled to recover attorneys' fees, costs, and expenses under the FLSA and NYLL. *See* 29 U.S.C.S. § 216(b); N.Y. Lab. Law §§ 198, 663(1). The parties are encouraged to resolve Plaintiffs' request for attorney fees and costs prior to motion practice. Otherwise, Plaintiffs are directed to make their motion for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d) no later than fourteen days from the date of this decision.

## IV. CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to enter judgment for Plaintiffs and against Defendants jointly and severally, in the following amounts: (1) $119,886.88 to Guiming Shao, which includes: (i) $11,300 in unpaid regular wages, (ii) $44,893.44 in unpaid overtime wages, (iii) $2,500 in statutory damages for wage notice violations under the NYLL, (iv) $5,000 for wage statement violations under the NYLL, and (v) $56,193.44 in liquidated damages; and (2) $30,185.84 to Shanfa Li, which includes: (i) $1,950 in unpaid regular wages, (ii) $8,142.92 in unpaid overtime wages, (iii) $5,000 in statutory damages for wage notice violations under the NYLL, (iv) $5,000 for wage statement violations under the NYLL, and (v) $10,092.92 in liquidated damages. The Clerk of the Court is further directed to calculate prejudgment interest as described herein.

The clerk is respectfully requested to close the case.

Dated:   December 4, 2018
         White Plains, New York

SO ORDERED:

JUDITH C. McCARTHY
United States Magistrate Judge