UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X----------------------------------------------------------X          ECF CASE
SHAFA LI and GUIMING SHAO, *on behalf of*
    *themselves and others similarly situated*,
       Plaintiffs,                                            Civil Action No.
                                      16-cv-07787(JCM)


      -against-


CHINATOWN TAKE-OUT INC.,
d/b/a China Town et al . and .
YECHIEL MEITELES,
        Defendants.
----------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO ALTER OR AMEND JUDGMENT


Bernard Weinreb
Attorney at Law
2 Perlman Drive, Suite 301
Spring Valley, New York 10977
————

(845) 369-1019

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................1

ARGUMENT

1.   Standards Governing a Motion for Reconsideration.............................1

2.   The Plaintiffs Should Not be Believed Regarding Factual Matters............3

3.   Defendants Should be Believed Over the Plaintiffs With Respect
     To Straight Time Pay...................................................................6

     A.  Plaintiffs Should Not Have Been Believed Because They
         Are Proven Liars.................................................................6

     B.  Shao Admitted that he Received Most of His Straight
         Time Wages......................................................................6

     C.  Shao's Testimony Regarding His Wages is Unbelievable............7

     D.  Defendants Did Not Agree that They Owed Shao $11,300
         In Wages.........................................................................7

     E.  Plaintiffs' Testimony Were Consistently Not Credible..............8

4.   The Court Should Accept Defendants' Position Relating to Overtime......9

     A.  Plaintiffs Should Not Have Been Believed Because They
         Are Proven Liars................................................................9

     B.  Defendants Testified that the Plaintiffs Took More Than
         An Hour of Meal Breaks Each Day.......................................10

     C.  The Court Misunderstood a Statement Made by Yechiel
         At Trial..........................................................................12

     D.  No Need to Credit Hours as Work Even if Plaintiffs May Not
         Leave Premises.................................................................15

     E.  Overtime Pay Calculated Incorrectly by the Court...................17

5.   Plaintiffs' Perjury Should Preclude Them From Recovering Any
     Damages.........................................................................................20

6.      The Other Damages Awarded Should be Significantly Modified............22

        CONCLUSION.......................................................................................23

## **Preliminary Statement**

Plaintiffs, Shanfa Li ("Li") and Guiming Shao ("Shao") (collectively, Li and Shao will hereinafter be referred to as the "Plaintiffs"), brought an action against Defendants alleging labor law claims under state and federal law.  On August 22, 2018 and August 27, 2018, the Honorable Magistrate Judge, Judith C. McCarthy, presided over a bench trial regarding this matter.

By Opinion and Order, dated December 4, 2018 (the "Order"), which was entered as a Judgment by the Clerk of the Court on December 6, 2018 (the "Judgment"), Judge McCarthy set forth her findings of fact and conclusions of law regarding this case.  A copy of the Judgment, along with the Order, is attached to these motion papers as Exhibit A.  In this motion, we respectfully request that the Court modify the Judgment and the Order to correct the legal and factual errors we discuss below, which corrections would revise the liability and damages owed by Defendants to the Plaintiffs.

We believe the Court erred with respect to the following conclusions with respect to which we seek correction:  the amount of straight time wages due to Plaintiffs, if any, and the amount of overtime owed to Plaintiffs, if any.  These corrections would have an impact on other matters set forth in the Order, such as, *inter alia,* reducing and/or eliminating liquidated damages, interest, etc.   We discuss each of these items below.

1.  Standards Governing a Motion for Reconsideration.

Under Federal Rule of Civil Procedure ("FRCP") 52(b), the court may amend its findings, or make additional findings, and may amend the judgment accordingly.  Further, under FRCP 59(e), a party may file a motion to alter or amend the judgment on the basis of a clear error of fact or law.  *See* Norman v. Arkansas Dept. of Educ., 79 F.3d 748, 750 (8th Cir. 1996) (motion to correct error of fact); Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 153 (2d Cir.

2008)( "[D]istrict courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice");  Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir.2004). The only real limitation on this type of the motion is that it must request a substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment." Shrader v. CSX Trasp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).[1]

We respectfully maintain that the Court erred in crediting the testimony of the Plaintiffs relating to several factual issues, *inter alia,* whether they were required to be on call for work during their meal breaks, the length of their meal breaks, the receipt of their pay for their straight time worked, over the testimony of the Defendants to the contrary.  It was clear error for the Court to accept Plaintiffs' testimony over that of Defendants disputing their claims since these Plaintiffs had no credibility at trial.  Plaintiffs were proven at trial to be liars, giving much obviously false testimony at trial in order to promote their case that was so incredibly dubious or inherently improbable that no reasonable person could believe it.

The Court further clearly erred with respect its conclusion that the flat salary of $650 per week for Li and the monthly salary of $3,000 for Shao were intended to cover only their first 40 hours of work each week, as discussed below.

The Court also erred with respect to the law regarding, *inter alia,* needing to credit meal time if the Plaintiffs were not permitted to leave the premises during their meal breaks, with respect to not considering Plaintiffs to have being paid at all for their weekly hours over 40, and with respect to the Court not calculating unpaid straight time by using the minimum wage rate.

Finally, as discussed below, the Court should vitiate all the damages against Defendants

---

[1] Alternatively, we are relying on FRCP 60 which can also provide relief to the Defendants from the Judgment, as FRCP 60 provides for corrections of a judgment by the Court in the event of, *inter alia,* mistake (we claim that the Court made factual and/or legal mistakes) and fraud, misrepresentations or other misconduct by an adverse party (as discussed below, we maintain that the Plaintiffs clearly perjured themselves at trial, which should result in the them not being permitted to recover damages).  We discuss this further in the memorandum below.

as the Plaintiffs clearly perjured themselves at trial with respect to matters that were the heart of the case and which was the basis of the damages award.  This requested relief is available pursuant to FRCP 60(b)(3)(fraud, misrepresentations or other misconduct of an adverse party. *See, e.g.,* Tiller v. Baghdady, 294 F.3d 277, 282 n.6 (1st Cir. 20012)(allegation of ordinary fraud such as perjury may be raised in a motion under FRCP 60(b)(3), even if insufficient to support an independent action for 'fraud upon the court' under FRCP 60(b)).  This requested relief is also available based on the concepts of unclean hands and perjury by Plaintiffs on the Court.

2.    The Plaintiffs' Should Not Be Believed Regarding Factual Matters.

The conclusions of the Court as to liability by Defendants to the Plaintiffs and the amount of the damages were based mostly on the basis that the Court credited the testimony of the Defendants, Shao and Li, over the testimony of the Plaintiffs as being more credible with respect to the following factual issues: whether Plaintiffs received all their straight time wages owed to them, whether the Plaintiffs were completely relieved from their duties during their meal breaks and with regard to the length of their meal breaks.

The testimony of the Plaintiffs and the Defendants regarding these factual matters conflicted with each other as the Plaintiffs claimed they were owed straight time pay while defendant, Yechiel Meiteles, testified that he did not owe Plaintiffs any wages.  Furthermore, while Plaintiffs claimed that they were not completely relieved from their work duties during their lunch breaks because they were both required to stay in the restaurant during meal breaks, the Defendants testified that they were free to do what they pleased during their meal breaks. Finally, while each of the Plaintiffs claimed that they took just a few minutes for each of their meal breaks, the Defendants claim that the Plaintiffs took much longer meal breaks.

With respect to these matters, as the Court did not observe what was going on in the

3

restaurant during the time that the Plaintiffs were employed at the restaurant, the Court cannot know what actually happened as a matter of fact.  Therefore, the Court does not have actual knowledge as to whether or not Plaintiffs received all their wages, whether they were required to do work for the employer during their meal breaks, whether the Plaintiffs were permitted to leave the restaurant during their meal breaks and the length of Plaintiffs' meal breaks. Accordingly, as is the case in all trials, the only way the Court could make its determination of these factual issues was by hearing the testimony of each of the witnesses at trial and deciding who the Court believed.  In other words, the Court needed to decide which of the parties' testimony was more credible at trial.

At times, this credibility assessment is a difficult issue, as in many cases all the witnesses sound truthful, and there is no reason to suspect one witness of being a bigger liar than the other witness.  When this happens, the Court has the difficult duty of deciding which side it believes based on the demeanor of the parties and which testimony makes more sense.

In our case, however, this decision as to whom to believe regarding these factual issues, Plaintiffs or Defendants, should have been obvious since both Plaintiffs, Li and Shao, stated many obvious lies at trial, and they repeated these lies over and over again.  Thus, the Plaintiffs have repeatedly proven at trial that they were willing to lie to the Court in order to accomplish the results they were seeking at trial. For example, both Plaintiffs lied about working at the restaurant during the Jewish holiday when the restaurant was obviously closed, lied that Mrs. Meiteles drove them to the restaurant on a Jewish holiday when driving is obviously prohibited, lied that Tom had a key to the restaurant when this would negatively affect the kosher certification, lied that they spent days cleaning the restaurant on the Jewish holidays when the restaurant was closed and when there was obviously not so much to clean, and stated other

4

obvious lies at trial.   A summary describing relevant trial testimony, including testimony by

each of the Plaintiffs that were clearly false, is attached hereto as Exhibit B.  A copy of the pages

of the trial transcript quoted in the summary in Exhibit B is attached hereto as Exhibit C.

Even the judge pointed out on page 4 of the Order that Plaintiffs' testimony regarding

their working on every Jewish holiday cleaning the restaurant was "incredible," listing the fact

that "Chinatown Takeout is a Glatt Kosher restaurant centrally located in an ultra-Orthodox

Jewish Community," that "if the restaurant was open or even had its lights on during a holiday, it

would lose its Glatt Kosher license," that "no one can enter the restaurant without supervision by

someone with knowledge of the Glatt Kosher laws," and "Orthodox Jews do not work or travel

on holidays as it is strictly forbidden."  Moreover, the testimony by Shao and Li regarding their

doing cleaning on the Jewish holidays was obviously false as the "Defendant hired a professional

Kosher cleaning company to do heavy duty cleaning of the restaurant on a regular basis."

At trial, each of the Plaintiffs repeatedly perjured themselves, testifying to the opposite of

these obvious truths, as can be seen from Exhibit B and C.   These were not just isolated lies by

the Plaintiffs, but they lied about these matters repeatedly at trial, establishing themselves as

proven liars who should not be believed.[2]

While a finder of fact has discretion to decide who she believes, at a certain point, after

hearing numerous lies on a continuing basis at trial, it is unreasonable to accept any testimony of

these witnesses which is helpful to their case as being truthful.  We respectfully maintain that

Shao and Li said so much totally unbelievable testimony that was obviously false, that it was

unreasonable for the Court to accept any of their testimony that was disputed by the much more

---

[2] Also, the Opinion and Order at footnote 12 at page 12 highlights an obvious lie by Li regarding his wages, in that it would have been impossible for Li to be owed the wages he claimed at trial as Li could have at most been owed $1,950 in wages as of the commencement of this case and he claimed he was owed double this amount, $3,900.

credible witnesses for the Defendants.[3]

Shao and Li proved at trial that they were willing to lie over and over again in order to promote their case.   Therefore, they should have had no credibility against the testimony of each of the Defendants' witnesses who were clearly much more credible.  Accordingly, whatever factual statements Plaintiffs made at trial that promoted their versions of the facts, relating to their, pay, work and hours at the restaurant, should not have been believed by the Court over the contrary testimony regarding these matters by the Defendants.

Applying this credibility assessment standard, as discussed in greater detail below, we respectfully request that the Court alter its findings and conclusions to credit the testimony of the Defendants over the testimony of Plaintiffs relating to the amount of wages owed them at their termination of employment, the fact that Plaintiffs were not on call during their meal breaks and the fact that each of the Plaintiffs had meal breaks of more than an hour each work day.

    3. <u>Defendants Should be Believed Over the Plaintiffs With Respect to Straight Time Pay</u>

    A.    <u>Plaintiffs Should Not Have Been Believed Since They Are Proven Liars</u> - As discussed in the previous section of this memorandum of law, as Yechiel Meiteles, on behalf of the Defendants, claimed that the Plaintiffs received all of their straight time pay, Mr. Meiteles' testimony should have been believed, as Plaintiffs proved themselves at trial to be liars to promote their case whose testimony regarding disputed facts should not be give any weight.

    B.    <u>Shao Admitted that he Received Most of His Straight Time Wages</u>.  Furthermore, Shao essentially admitted at trial that he was paid most of his wages.

---

[3] *See, e.g.,* <u>Mormilo v. Allied Stevedores Corp.</u>, 1 AD2d 966, 183 NYS2d 691 (1st Dep't 1959)(judgment reversed on the ground that the verdict is against the weight of the evidence as the plaintiff's version of the occurrence and the manner in which he sustained his injury is highly improbable), and <u>Bottalico v. New York</u>, 281 AD 339, 119 NYS2d 704 (1st Dep't 1953)(Despite the court's acknowledgement of the weight to be give a jury's verdict, where the facts were disputed and issues of credibility were presented, the court could not give credence to a story so inherently improbable).

At page 122, line 24 through page 123, line 1 of the trial transcript, Mr. Shao testified that he was paid up to date by Chinatown Takeout as of the date which about six months before he left (in other words, he was paid all that was owed to him as of May 2016.) Then, at page 125, lines 12 through 14, in response to my question "In fact, you were being paid between – you received payments on a regular basis from May 2016 to November 3, 2016?" Mr. Shao answered "Yes, I get paid."

In these lines, Mr. Shao admitted that he was paid substantially all his wages as of the date he terminated employment at Chinatown Takeout, since he testified that he received all his pay as of May 2016 and that he was receiving pay on a regular basis from May 2016 until his termination of employment five months later, on November 3, 2016. This admission by Mr. Shao undermines the Court's conclusion that Mr. Shao essentially received just a fifth of his wages he earned during his final six months of employment with Chinatown Takeout.

C.    Shao's Testimony Regarding His Wages Is Unbelievable.  Besides the fact that Shao essentially admitted by this testimony that he received most of his wages and that he could not have been owed $11,300 as of his termination of employment, the $11,300 figure he claims he was owed does not tie into this testimony that he was paid his wages on a regular basis during his final six months of employment. Furthermore, it is difficult to believe that he would continue working for Chinatown Takeout even though he had not been paid for more than 17 weeks out of the his final approximately 26 weeks of employment.[4]

D.    Defendants Did Not Agree that They Owed Shao $11,300 in Wages – Contrary to what was stated by the Court on page 13 of the Order that "the trial testimony demonstrates that

---

[4] The Court stated in footnote 10 of the Order that it did not agree with the recent opinion of this court, in Contrera v. Langer, 314 F.Supp. 3d 562, 570 (SDNY 2018) which held that the plaintiff in an New York Labor Law case cannot recover more than minimum wage for the unpaid wage claim and cannot recover the agreed upon wages. Were such holding applied to this case, this would have reduced the amount of straight time wages the Plaintiffs can recover in this case. We believe, contrary to the Order, that the Contreras decision is well reasoned and correct.

there is no dispute that Defendants owed Shao $11,300 in unpaid wages on November 6, 2016."
(citing to Trial Tr. At 100-01 and 189), the Defendants, in fact, testified that Defendants did not
owe Shao such amount of pay.

At trial transcript pages 100 and 101 cited by the Court to support its conclusion, Mr.
Shao testified, in response to his attorney's question as to what was meant by Plaintiffs' Exhibit
1. This Exhibit is essentially just a piece of paper with a few numbers circled without any
explanation on such paper as to what these numbers represent. There is not a single phrase on
this document stating what these numbers mean, or a statement that money was owed or not
owed. Thus, this document by itself tells us nothing.

Therefore, the meaning of what was intended by the document can be determined only by
the testimony of the parties explaining the document. While Shao stated that the document was
meant to indicate that he was owed $11,300, Yehuda Meiteles testified at page 189 that nothing
was owed to Shao and that Exhibit A had some relation to the payment of the wages due to Shao,
but that he did not recall the exact meaning of each of the numbers on the document.

Furthermore, Yechiel Meiteles testified at page 208 of the trial transcript that he paid
Shao all his wages.

Therefore, the Court's statement that there was no dispute the Defendants owed Shao
$11,300 on November 6, 2016 is factually incorrect. There was, in fact, conflicting testimony
between Shao and the Defendants as to whether or not he was paid his wages and, as stated
previously, since Shao was proven at trial to be a liar, none of his testimony that was opposed by
Defendants should have been accepted by the Court as being true.

E.   <u>Plaintiffs' Testimony Were Consistently Not Credible</u> -  The Court on page 13 of
the Order stated that "Shao consistently and credibly testified that Defendants did not pay him

$11,300 in regular wages on November 6, 2016, or anytime thereafter."

How can the Court state that Shao <u>consistently and credibly</u> testified as to being owed $11,300 (approximately four months of wages) when, as stated previously in this memorandum, Shao admitted that he was paid all his straight time wages through May 2016 and, during the following five months of his employment, he was being paid his wages on a regular basis?   His claim that he was owed $11,300 is not supported by what he states at page 128 since, as stated above, Shao himself testified that he was paid on a regular basis.

Nevertheless, the Court accepted as true Shao's testimony that he was owed $11,300 at his termination of employment. If this conclusion were correct, it would mean that Shao received only $3,000 of total salary over his last five months of employment, or a monthly amount of $600, instead of receiving a monthly amount of $3,000.

Furthermore, it is difficult to believe that he would have been willing to continue working for Chinatown for so long under these circumstances. Also, if this were true that Shao received wages of only $300 of the $3,000 due to him each month, he should have stated this at trial when questioned regarding his being paid over the last five months.

4.   <u>The Court Should Accept Defendants Position Relating to Overtime</u>.

A.   <u>Plaintiffs Should Not Have Been Believed Since They Are Proven Liars</u> - As discussed earlier on in this memorandum of law, as the Defendants countered Plaintiffs' testimony by stating that when the Plaintiffs took their meal breaks they could not be disturbed and that they took more than an hour of meal breaks each day, the Defendants should have been believed over the testimony of the Plaintiffs regarding these meal break issues, as Plaintiffs proved themselves at trial to be liars to promote their case. Therefore, Plaintiffs' testimony regarding these disputed facts should not have been given any weight by the Court. Instead, the

Court should have accepted as true the testimony of the Defendants with respect to these meal break factual issues. Therefore, the Court should change its Order regarding these overtime issues in favor of Defendants and rule that Plaintiffs are, in fact, not owed any overtime pay.

   B.    Defendants Testified that the Plaintiffs Took More Than an Hour of Meal Breaks Each Day.    Each of the three witnesses testifying at trial on behalf of the Defendants testified that the Plaintiffs took more than an hour's worth of meal breaks each day.

   Aryeh Meiteles testified at page 14, lines 22-25 of the trial transcript that Shao would take an hour lunch break each day. He further testified that Shao also took at ½ **hour dinner break** right before the rush started at about 4:30, 4:45 (p. 16 line 24 through page 17, line 6). He also testified that Shao **took his lunch time even on Fridays**, when the restaurant was only open from 11 until 2. (p. 17, lines 7 through 14).

   Yehuda Meiteles testified at page 187 of the trial transcript that Li and Shao took a lunch break of "at least" a half hour "without question." As Yehuda explains in his Affirmation attached to these motion papers, Li and Shao each normally took lunch breaks of longer than an hour each day, besides their dinner break. However, on some busier days they may have taken a shorter break, which was "at least" a half hour. He also stated at lines 18 and 19 of page 187 of the trial transcript that "they were not on call during those times," which is contrary to the Court's conclusion regarding this issue.

   Yechiel Meiteles testified at page 216, lines 1 through 19, of the trial transcript that Shao and Li each took at least an hour lunch. At page 254, line 13 through 16, Mr. Meiteles testified that Li and Shao typically took an hour and a half or two hours for lunch each day, and that they were not required to work during their lunch time. Also, at lines 2 and 3 on page 254 of the trial transcript, he testified that they typically took a 45-minute dinner break each day in the latter part

of the day and, at lines 19 and 20, testified that they were not required to work during their dinner time, as well.

Furthermore, the Defendants testified, contrary to the Plaintiffs, that the Defendants never required Plaintiffs to do any work for the restaurant during their meal breaks. Yehuda Meiteles testified at page 187 of the trial transcript that Shao and Li were not on call during their lunch breaks.

Yechiel Meiteles stated in his Affirmation attached to this motion that Shao and Li were not on call during their meal breaks. Also, at page 254, lines 4 through 6 and at lines 17 through 20 of the trial transcript, Yechiel testified that Shao and Li were not working during their lunch and dinner times.

While Yechiel Meiteles made a statement during trial that may have erroneously been construed by the Court to be an admission that the Plaintiffs were not permitted to leave the restaurant during their meal breaks, Mr. Meiteles explains in his Affirmation that, as English is a second language to him, he misunderstood the question and that his testimony regarding this issue did not mean what the Court interpreted it to mean. See a further discussion of this point in the following section of this memorandum of law.

Finally, the restaurant was very quiet for most of the day. Therefore, there would be no reason for the restaurant to have Plaintiffs on call during their meal times

Aryeh Meiteles testified that the peak times in the restaurant was lunch time, from 12 to 1 and dinnertime from about 5 to 7 pm, that there was a lot of down time between 1 and 5, with barely any customers at that time (p.11, lines 3-13) and that it was also very slow after 7 pm. (p. 11, lines 16-19). He also testified that after lunch, since it was so quiet, Shao would just sit and

hang out; there was a lot of down time. (p. 14, line 25 through page 15, line 9). The down time lasted till about 4:45. (p. 15, lines 10-11). It was very quiet after 7:15 (p. 15, lines 20-23).

Yehuda Meiteles testified at page 187, lines 19 and 20 that the restaurant was not busy during their meal breaks, so being on call was not relevant. (See also page 188, lines 5 through 12 of the trial transcript and page 188, line 25 through page 189, line 4 of the trial transcript.)

Yechiel Meiteles testified at page 216, lines 1 through 19 of the trial transcript that Shao and Li each took at least an hour lunch and that it was usually dead in the restaurant.

C.   The Court Misunderstood a Statement Made by Yechiel at Trial - It is our impression that the reason the Court concluded that the Plaintiffs were on call during their meal breaks was not because the Plaintiffs appeared to be more credible that Defendants at the trial. In fact, since Plaintiffs repeatedly perjured themselves at the trial and were proven to be liars, why would the Court accept an established liar's testimony as being the truth? Instead, we attribute the Court's conclusion to have been based on the Court's erroneous interpretation of an isolated statement made by Yechiel Meiteles at trial as being an admission by Yechiel that Defendants required the Plaintiffs to be in the restaurant at all times and did not permit the Plaintiffs to use their meal breaks as they pleased.

We respectfully point out to the Court that the Court misunderstood Yechiel's testimony as Yechiel used incorrect words to express himself that were not intended to mean what the Court understood these words to mean. Since Yechiel is not so fluent in the English language, as English is his second language, he misunderstood the question posed to him and had problems eliciting the response he wanted to elicit correctly. See the Affirmation of Yechiel Meiteles submitted along with these motion papers which supports what we state here.

As the Court knows, Yechiel is from Israel. Hebrew is Yechiel's primary language, not English. Therefore, when questions are posed to him in the English language, based on the fact that he is less familiar with proper language usage than a native American and based on expressions used when communicating in Hebrew, he sometimes interprets such questions differently than someone who speaks English as his primary language. Similarly, when he expresses himself in English, he sometimes may say one thing, literally, when he means to say something completely different. This is what happened to Yechiel with respect to one statement he made in this case that had such a major negative impact on the ultimate result.

The Court stated at *3 of the Order that "Yechiel Meiteles testified that Plaintiffs spent around an hour eating lunch, but that ***Shao and Li were required to be in the restaurant from 11:00 a.m. to 8:00 p.m. at all times.***" It seems (based on the citation to the trial transcript in the Court's Order) that the Court based its conclusion - i.e., that the Plaintiffs were required to be in the restaurant even during their meal breaks - on the following question and answer at page 225, lines 20 through 25 of the trial transcript in which Plaintiffs' counsel, Aaron Schweitzer asked:

"Q.    Is there ever any time when Li and Shao were required to be in the business?

A.    ***All the time***.

Q.    I'm sorry, can you repeat that?

A.    They're required to be in the business from 11:00 to 8:00 o'clock at night."

Earlier on in this line of questioning of Yechiel by Mr. Schweitzer, Mr. Schweitzer asked at lines 7 and 8 on page 225, "And were workers (at lines 13 through 15, Mr. Schweitzer clarified that he was asking specifically regarding Li and Shao) free to leave the restaurant during that time [i.e., at any time during the work day?]"

A. "to eat?

Q. "Free to leave the restaurant during that time."

"A.  They're allowed to leave whenever they want.  They leave whenever they want. Sometime they go out, do whatever they have to do."

Thus, Yechiel made clear in this testimony that Li and Shao were free to leave the restaurant during their meal break, which (as he testified at page 216 of the trial transcript) was about an hour long, and that during that meal time they can leave and do whatever they want.

However, immediately following this testimony that Plaintiffs were free to use their meal breaks as they pleased, Yechiel suddenly testified (on the same page of the trial transcript) what appears to be an admission that he did not permit Plaintiffs to leave the restaurant during their lunch break by stating "All the time" in response to Mr. Schweitzer's question as to whether there was a time during which Li and Shao were required to be in the business.

It is obvious from the flow of the questions and answers in this portion of the trial transcript that Yechiel misunderstood the question posed to him and/or failed to express what he meant to express.  If Yechiel would have understood the question, he would have simply responded, "Yes, there is a time that the Plaintiffs needed to be at the business (i.e., during the busy periods of the day).  Why would Yechiel go beyond the scope of the question posed to him to volunteer something so harmful to his case – that he required the Plaintiffs to **always** be in the restaurant, even during meal breaks – when he was not even asked this question by Mr. Schweitzer?  Furthermore, why would Yechiel suddenly voluntarily change his testimony, in a manner that is so harmful to his case, to indicate that Plaintiffs needed to be at the restaurant during their lunchtimes when just a minute earlier at trial he testified that Plaintiffs did not need to be in the restaurant during their lunchtime?  (It seems that even Mr. Schweitzer was surprised by what Yechiel stated, since Mr. Schweitzer asked in response to this testimony, "Can you repeat that?")

The answer to these questions is that Yechiel misunderstood the question being posed to him as being the following: when were Li and Shao required to be in the restaurant during their work times? to which he responded they must be there "All the time," meaning all the time during their work times; Yechiel did not mean to state that they were on call during their meal breaks.

Besides the fact that there would be no reason for Yechiel to suddenly change his testimony to state that Li and Shao needed to be on call even during their meal breaks, why would Yechiel keep Shao and Li on call to do work during the meal times if, as Yechiel and his sons testified at trial, things were extremely quiet for most of the day? The fact is that the Plaintiffs sat around doing nothing for a good part of each work day as there was nothing to do. Certainly, there was nothing for them to do during their meal breaks.

D.   No Need to Credit Hours as Work Even if Plaintiffs May Not Leave Premises

The Court ruled at page 18 of the Order that Plaintiffs' meal times were not bona fide to permit such time to be uncompensated by the Defendants as "Plaintiffs were not completely relieved from their work duties because they were both required to stay in the restaurant during meal breaks, and they had to stop eating if a task needed to be completed." On page 3 of the Order, the Court concluded based on Shao's testimony at page 96 of the trial transcript that "Shao and Li were required to be in the restaurant from 11:00 a.m. to 8:00 pm at all times" (citing to pages 225-26 of the trial transcript). The Court also stated in support of its ruling that "Shao further testified that if a job needed to be done during one of his meal breaks, he had to stop eating and complete the task." (citing to page 96 of the trial transcript).

Starting with the second conclusion reached by the Court that Plaintiffs needed to stop eating during their meal break if a task needed to be completed, this conclusion is based solely

on one statement made by Shao in which he responded to the question posed by his attorney at trial at page 96 of the transcript at lines 8 through 10 as to what would happen if a job needed to be done while he was still eating, to which he responded that he would need to stop.

However, as discussed above, each of the Defendants testified that this was, in fact, not the case. Instead, the Plaintiffs could take their meal breaks uninterrupted. As Shao was shown to be a liar throughout the trial, his testimony that he was required to work during his meal time should not have been accepted over the testimony of the Defendants that his meal breaks were not interrupted.

As to the first conclusion reached by the Court as to whether Plaintiffs were permitted to leave the restaurant during their meal breaks, besides the fact that the Defendants testified that the Plaintiffs were permitted to leave the restaurant during their meal breaks, under the New York Labor Law, an employee need not be credited for hours worked if the employer may not bother him during his meal break, even if the employee may not leave the premises during such meal break.

The New York State Department of Labor issued guidelines relating to meal and rest periods, at https://www.labor.ny.gov/legal/counsel/pdf/meal-and-rest-periods. These guidelines specifically state, at page 4, that "There is nothing in the Labor Law that requires that an employee be permitted to leave the work premises for the meal period, so long as the employee is completely freed from duties during the meal period." See a copy of these guidelines attached as Exhibit D.

In light of this rule, and the fact that, contrary to Shao's testimony, he was not required to perform any duties for the employer during his meal breaks, such meal breaks should have been counted by the Court as hours worked by them.

E.     Overtime Pay Calculated Incorrectly by the Court

As stated previously, we respectfully maintain that, based on the conflicting testimony at the trial, the Court should have concluded that the Plaintiffs did not work any overtime or, at least, very little overtime (no more than three hours each week). In addition, we respectfully maintain that the Court used the incorrect method of calculating the dollar amount to be applied for each hour of overtime allegedly worked by the Plaintiffs.

At page 15 of the Order, the Court ruled that each of the hours of overtime for which Plaintiffs were not allegedly paid, the Defendants needed to pay Plaintiffs one and a half times the hourly wage rate instead of being required to pay for only one half of the hourly wage rate; in other words, that the Plaintiffs received no pay for their hours over 40.  On the basis of this conclusion by the Court, Li, who the Court determined at page 16 had a regular hourly rate of $16.25, needed to be paid at the rate of $24.38 for each hour of overtime he worked.  Similarly, Shao, whose regular hourly rate was determined by the Court at page 16 of the Order to be $17.32, was required to be paid at the rate of $25.98 hours for each hour of overtime worked.

Thus, the Court considered the flat salary that Li and Shao  received for each week as covering only the first forty hours of their work for that week (Li receiving $650 per week and Shao receiving $692.84 per week) and that they did not receive any pay for the work they performed for the restaurant above forty hours per week.

While it would seem more logical, as we maintain, that Shao and Li received all their straight pay for all the hours they worked each week, which would have resulted in Defendants needing to pay them only for the 50% additional hourly rate due for their overtime hours (instead of needing to pay them 150% of their hourly rate for such overtime hours, as the Court concluded), which would have entitled Li to receive only $8.13 for each hour of overtime and

entitled Shao to receive only $8.66 for each hour of overtime, the Court did not apply this more logical approach to compute the underpayment of overtime pay.  Instead, the Court concluded at page 15 and 16 of the Order that since "Defendants did not offer any credible evidence that there was an agreement or understanding that Plaintiff's salaries were intended to cover overtime hours."

We respectfully disagree with this conclusion by the Court, as it is much more reasonable to presume under the circumstances of this case that Li and Shao received their straight time pay for each of the hours they worked each week and that the only wages they did not receive was the 50% extra wages due for their alleged overtime hours worked.

Since Li and Shao had a set schedule week after week, working from 11 a.m. until 8 p.m. each Sunday through Thursday and from 11 p.m. until 2 p.m. on Fridays, other than on holidays, it is obvious that the understanding between the parties was that Li's $650 each week and Shao's $692.84 each week covered all the hours they worked each week.

Our theory for this presumption as to how to look at what was not paid for overtime hours in a case, such as this, in which plaintiffs are paid a flat salary each week and the weekly hours are the same week after week, is supported by case law.  For example, in Cazarez v. Atl. Farm & Food, Inc., 2017 US Dist LEXIS 76785; 2017 WL 3701687 (EDNY 2017) the court held that where the plaintiff's work schedule was reasonably constant, it was reasonable to infer from the parties' course of conduct that they intended plaintiff's weekly salary to include straight time pay for each hour worked.

Applying this approach to calculating overtime pay to our case, since the Plaintiffs had the same schedule each week – from 11 until 8 Sunday through Thursday and from 11 until 2 on Fridays – except during weeks in which there was a holiday, the pay (for example, Li's $650 per

week) covered all 48 hours.[5]  Therefore, Li's hourly rate was, according to the Order, $16.25 per hour but the only wages he was not paid each week was the overtime pay of one half of this hourly rate, i.e. $8.13 per hour.  This $8.13 amount should then be multiplied by the total number of overtime hours for which he was not paid.

Similarly, as to Shao, considering that his weekly salary was $692.84 and that his hourly rate as being $17.32, the only wages he was not paid each week was the overtime of $8.66 per hour multiplied by the number of overtime hours for which he was not paid.

Thus, even accepting the Court's determination of total hours of overtime not paid (which we dispute), Li is owed $2,718.44 (334 times $8.13) and Shao is owed $14,964.48 (1,728 times $8.66), instead of the $8,142.92 for Li and the $44,893.44 for Shao calculated by Court.

We actually maintain that Li and Shao did not work any overtime.  Furthermore, if the Court were to agree with our contention above that at least five hours per week should have been deducted from his work, then, based on the Court's finding in footnote 19 of the Order that Li worked at total of 40 weeks, and assuming that Li was not paid for 3 hours of overtime each week, then the total amount of overtime hours due to Li is 120.  Thus, the total overtime pay owed Li is $975.60, calculated as 120 times $8.13.

Similarly, as to Shao, since the Court determined that Shao worked at total of 209 weeks, and assuming that Shao was not paid for 3 hours of overtime each week, then and applying this number to the 209 weeks that Shao worked to his hourly rate of unpaid overtime in the amount of $8.66, the total amount of overtime due would be $5,429.82.

Thus, in sum, we respectfully maintain that not only are the Plaintiffs not entitled to

---

[5] While we maintain that Plaintiffs worked 43 hours per week or less, as discussed before, we are using the 48 hour per week conclusion by the Court to illustrate how the pay for the 8 hours of overtime should have been calculated by the Court.  By this discussion, we are not agreeing with the Court that the Plaintiffs actually worked for 48 hours per week.

payment for hours of overtime worked as stated by the Court in the Order, but the hourly rate to be paid for each hour of overtime worked would be substantially lower than what the Court determined to be due in the Order.

5.   Plaintiffs' Perjury Should Preclude Them from Recovering Any Damages

As discussed previously, Plaintiffs obviously perjured themselves at trial over and over again by making incredible claims relating to the restaurant being open on the Jewish holidays, they spent each day of the Jewish holiday cleaning the restaurant when the restaurant was closed, that they were driven to the restaurant by Mrs. Meiteles on the Jewish holidays, and made several other incredible claims throughout the trial.   These were just isolated false statements. Instead, they kept on lying over and over again at trial.  The Court itself acknowledged the fact that some of the testimony was incredible.

As stated previously, FRCP 60(b)(3) provides that, on motion, the court may relieve a party from a final judgment, order, or proceeding for "fraud…, misrepresentation, or misconduct by an opposing party." *See, e.g.,* Tiller v. Baghdady, 294 F.3d 277, 282 n.6 (1st Cir. 20012) (allegation of ordinary fraud such as perjury may be raised in a motion under FRCP 60(b)(3), even if insufficient to support an independent action for 'fraud upon the court' under FRCP 60(b)).  Also, pursuant to FRCP 60(d)(3), the Court has the power to set aside a judgment for fraud upon the Court.

We respectfully submit that since the Plaintiffs clearly perjured themselves repeatedly at trial, and their testimony went to the heart of the plaintiffs' case – e.g., they tried to recover a significantly greater amount of damages for straight time, overtime, etc. claiming to work on all days of each Jewish holiday, when this was obviously not true -- this should warrant the court granting the relief we are requesting that the Defendants should be entirely relieved of paying

any of the damages awarded by the Court in the Judgment.

In fact, Judge Katherine Polk Faila, of this Court, recently decided a wage and hour case, Marcelino v. 374 Food, Inc., 2018 U.S. Dist. LEXIS 51582 at *60, 2018 WL 1517205 (SDNY 2018) in which, although she concluded based on admissions by the Defendant that the plaintiff was provisionally entitled to damages, she raised the issue of whether the "Court may consider Plaintiff's perjury, and any other inappropriate conduct in this litigation, in determining his entitlement to recovery under the NYLL?" The opinion also states at *58 "While the Court may have resolved the question of the damages to which Plaintiff is provisionally entitled, it has left open a more significant question: Give the conduct at trial, is Plaintiff entitled to damages at all?"

The perjury in that case was Plaintiff overstating the period of his employment at Defendant to the extent of perjuring himself in his testimony to the Court. Id at *2. It is respectfully submitted that the perjury in our case, Plaintiff vastly overstating his days worked (i.e., working nearly full days on all days of all Jewish holidays) is a similar perjury, which should raise the same issue.

While that decision, issued on March 27,2018, left this question open and the Court requested briefing on this issue (I do not know what Judge Polk Faila decided or if she has even decided this issue to date), it is respectfully submitted that there is ample support in the FRCP for the Court to set aside a judgment or prevent a recovery of damages, as just discussed. We respectfully request that the Court grant such relief in our case and that the Court not permit the Plaintiffs from recovering any damages, or attorneys fees, from the Defendants.[6]

---

[6] See, also, a seven page article written in 2004 entitled "The Perjuring Plaintiff," by Jonathan M. Stern of Schnader, Harrison Segal & Lewis in which he discusses much authority to lead to the conclusion that a perjuring plaintiff should not be permitted to recover damages in a litigation since doing so would be considered fraud on the court and/or plaintiff having unclean hands. See this article at https://www.schnader.com/files/Publication/e3f5e3d7-

6.     The Other Damages Awarded Should be Significantly Modified

Based on the foregoing, all the other damages awarded to the Plaintiff in this case should be removed or significantly reduced.

As the damages for unpaid straight time pay and overtime pay will be entirely eliminated or drastically reduced, the liquidated damages will be reduced to twice the amount of the newly determined much lower figure.

If the Court agrees with our arguments to not award any straight time wages, then the penalty for the failure to provide statutory notices under the New York Labor law should be eliminated pursuant to the exception to such penalty in circumstances that it is determined that the Plaintiffs were paid all their wages.

Furthermore, in prejudgment and post-judgment interest would be reduced based on the much lower liability figure.

Finally, once the damages are reduced to the extent we are seeking, Plaintiffs would no longer be able to recover attorney's fees and costs, as an offer of judgment, pursuant to FRCP 68(d) was made by Plaintiff on May 26, 2017 and the amount the Plaintiffs would recover at trial would be less than the amount Defendants offered to settle the case.

---

1f77-450d-80ff-26866b4aa2c4/Preview/PublicationAttachment/514594c4-8f88-475a-b1d9-1517f201b542/FTD-Stern.pdf.

CONCLUSION

In light of the foregoing, we respectfully request that the Court set aside the judgment against us in its entirety or modify the judgment to significantly reduce the damages the Court ruled to which the Plaintiffs are entitled

Respectfully Submitted

Bernard Weinreb
on behalf of the Defendants

23