UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------------X          ECF CASE
SHAFA LI and GUIMING SHAO, *on behalf of*
     *themselves and others similarly situated*,
        Plaintiffs,
                                Civil Action No.
                                16-cv-07787(JCM)

     -against-

CHINATOWN TAKE-OUT INC.,
d/b/a China Town et al . and .
YECHIEL MEITELES,
         Defendants.
------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

Bernard Weinreb
Attorney at Law
2 Perlman Drive, Suite 301
Spring Valley, New York 10977

———

(845) 369-1019

# TABLE OF CONTENTS

**Page**

Preliminary Statement..................................................................................1

ARGUMENT

1.  Legal Standard ................................................................4

2.  The Troy Firm is Already Known by this Court to Make
    Excessive Claims for Fees........................................…….......6

3.  The Hourly Rates for Which the Plaintiffs Seek Recover
    Is Excessive...............................................................9

    A.  Recent Court Decisions Limited the Fees to Troy, Byun
        and Schweitzer.......................................................9

    B.  Troy's Work Performance in this Case Was Poor...................10

    C.  Travel Should be Charged at 50% of the Hourly Rate..............12

4.  The Hours Expended by the Attorneys in this Case Was Unreasonable...15

    A.  Multiple Timekeepers in this Case Resulted in Inefficiency........15

    B.  Much of Mr. Troy's Work Was Entry Level.........................15

    C.  The Legal Fees Should be Further Reduced on Account
        Of Just Partial Success...........................................17

    D.  Legal Fees Should be Reduced on Account of Permitting
        Perjury...........................................................19

5.  Costs Should be Denied Because Support for such Costs were
    Not Provided............................................................19

6.  The Maximum Attorneys' Fee Award Should Not Exceed 1/3 of
    the Recovery............................................................20

7.  If Our Pending Motion to Alter/Amend Judgment is Granted, There
    May be No Attorney's Fee Award ; Offer of Judgment Was
    Served in June 2017....................................................20

    CONCLUSION..........................................................21

## Preliminary Statement

Plaintiffs, Shanfa Li ("Li") and Guiming Shao ("Shao") (collectively, Li and Shao will hereinafter be referred to as the "Plaintiffs"), brought an action against Defendants, Chinatown Take-Out, Inc. and Yechiel Meiteles, alleging wage and hour labor law claims under state (New York Labor Law) and federal law (Fair Labor Standards Act). On August 22, 2018 and August 27, 2018, the Honorable Magistrate Judge Judith C. McCarthy presided over a bench trial regarding this matter.

By Opinion and Order, dated December 4, 2018 (the "Order"), which was entered as a Judgment by the Clerk of the Court on December 6, 2018 (the "Judgment"), Judge McCarthy set forth her findings of fact and conclusions of law regarding this case. A copy of the Judgment, along with the Order, is attached to these motion papers as Exhibit A.

In the Order, the Court awarded a total of $119,886.88 to Shao, and a total of $30,185.84 to Li for unpaid regular wages, unpaid overtime wages, liquidated damages, statutory damages for wage notice violations and statutory damages for wage statement violations under the New York Labor Law ("NYLL"), to which was added interest.

The Court also stated in the Order that the Plaintiffs may file a motion seeking attorney's fees. The Plaintiffs filed such motion and, in these papers, we are opposing Plaintiffs' motion.

The Court reached its damages award after agreeing with Plaintiffs regarding certain of the factual issues presented at trial but agreeing with Defendants with respect to other factual issues; thus, the Plaintiffs were only partially, but not totally, successful at trial.

Specifically, the Court agreed with Plaintiffs that they were owed some straight time pay which they claim were not paid. The Court also agreed with the Plaintiffs that they were on call to do work, and that they were not permitted to leave the premises of the restaurant, during their

meal breaks; thus, they were entitled to pay for their dinner breaks, resulting in their entitlement to additional overtime pay for up to eight additional hours each week. The Court also agreed with Plaintiffs that they are entitled to damages for the failure of the Defendants to provide them with NYLL wage statements and wage notices, although the Court reduced the wage notice violation awarded to Shao to $2,500 from the $5,000 Shao sought.[1]

However, there is much to which the Court did not agree with Plaintiffs. Specifically, the Court agreed with Defendants that the Plaintiffs did not work on Jewish holidays (resulting in there being no overtime for each week in which there was a Jewish holiday). The Court also agreed with Defendants that the Plaintiffs worked just 9 hours each day Sunday through Thursday (from 11 am until 8 pm) instead of the 11 hours each day (from 11 am to 10 pm) claimed by Plaintiffs. On account of these conclusions in favor of Defendants, the Plaintiffs recovered much less overtime than they sought to recover. In addition, Defendants did not recover spread of hour wages they sought for each day (as the Plaintiffs did not work 10 hour days as they claimed).

As a result of the Court's rulings regarding overtime -- i.e. the Court cutting down the claims of hours worked by Plaintiffs each day and the claims of full weeks during the year that the Plaintiffs worked -- the Plaintiffs recovered just about 35% of the overtime they sought. Thus, the Plaintiffs were only 35% successful on their overtime claim. Had the Court ruled entirely in favor of Plaintiffs, they would have recovered nearly 3 times the amount of the overtime then they were awarded.[2] Furthermore, Plaintiffs recovered no spread of hour wages.

---

[1] We do not agree with most of these conclusions of the Court, as discussed below in this memorandum of law and as discussed in our motion papers to amend/alter the Judgment pending before the Court which we filed on January 3, 2019. That motion is currently pending before the Court.

[2] The method of coming up with the 35% of claimed overtime was as follows: Plaintiffs sought to recover 58 hours per week for every week during the year. Thus, each of the Plaintiffs sought to recover 936 hours of overtime each year computed as follows, 52 weeks per year times 18 hours of overtime each week, for a total of 936. Thus, Li,

Finally, earlier on in the case, on July 26, 2017 (docket entry 39) the Plaintiffs made a motion to certify this action as a class action. Plaintiffs' motion to certify a class was denied by the Court on February 21, 2018 (docket entry 59). Had Plaintiffs succeeded in certifying a class, this could have potentially significantly increased the damages to be paid by Defendants.

Considering all of the foregoing, Plaintiffs recovered just a fraction of what they sought to recover in this action. Therefore, Plaintiffs had only limited success in this action.

Plaintiffs are seeking statutory attorney's fees in the amount of $93,990.00 and costs in the amount of $3,138.01, for a total of $97,128.01. In these papers we oppose Plaintiffs' claim for attorney's fees on the basis of (a) the hourly rate being sought for the professionals working on the case is excessive, (b) the hours spent were excessive and (c) that certain other factors should cause the attorney's fees to be eliminated and/or further reduced, as discussed below.

Mr. Troy claims he worked on the case for 142.1 hours. At $450 per hour, this amounts to approximately $63,945. The 3 associates working on the case, for each of which Plaintiffs seek to recover fees at the rate of $250 per hour, claim to have worked the following hours: Joseph Indelicato (admitted to the bar in 2017) claims to have put in 7.4 hours (resulting in a fee of $1,850), George Byun (admitted to the bar in 2016) claims to have put in 57.4 hours (resulting in a fee of $14,100) and Aaron Schweitzer (admitted to the bar in 2018) claims to have put in 51.5 hours (resulting in a fee of $13,000); the total fee claimed for the 3 associates (116.3 hours) is $29,075. The 2 non-attorneys Maggie Huang and Bella Ho, put in a total of 4.5 hours and, based on the rate of $150 per hour, are claiming a total fee of $675.[3]

---

who worked for about one year, claimed 936 hours of overtime, but the Court awarded him just 334 hours of overtime, 36% of the amount sought by him. (See the Order at page 19). Shao, who worked for about 5 years and 4 months, claimed 936 hours of overtime times 5.33 of what Li received, or 4,989 hours of overtime. However, the Court awarded him only 1,728 hours of overtime, which is approximately 35% of the overtime he sought to recover.
[3] My math is slightly off, as the total fees for the attorneys and other professionals comes out to $93,695 and the timesheets show a total of $93,990, which is $295 more. Plaintiffs' attorneys did not provide a total breakdown per attorney of the fee being claimed and it became too time consuming for me to figure out this relatively minor

While we have a motion pending before the Court seeking to have the Court Alter/Amend the Judgment which, if granted by the Court, would eliminate and/or reduce the amount of damages to be awarded and could affect the amount of attorney's fees that the Plaintiffs may recover, we are filing these opposition papers to challenge the amount of attorney's fees calculated by Plaintiffs to date. Furthermore, should the Court not set aside the judgment in its entirety, as we request in our motion to Amend or Modify judgment, the Court should only permit an award of attorney's fees in an amount that considers the arguments for reduction of such fees and costs that we discuss in this memorandum of law below.

As we discuss below, the Court should award much lower attorney's fees than what is being sought by the Plaintiffs on the basis that the billing rates at which the Plaintiffs are seeking to recover attorney's fees are grossly excessive and the hours of work for which they seek recovery are grossly excessive. We also provide several other bases for having the attorney's fees award requested by Plaintiffs denied in its entirety or to have them significantly reduced.

ARGUMENTS

1. <u>Legal Standard</u>

Under both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of "reasonable" attorney's fees and costs. See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). In considering an application therefor, the Court must determine the presumptively reasonable fee or lodestar, *see* <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 184 (2d Cir. 2007), that is, "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively" <u>Simmons v. N.Y.C. Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009).

discrepancy.

Courts can and should exercise broad discretion in determining a reasonable fee award. *See* Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); Arbor Hill, *supra* at 190. The method for determining reasonable attorney's fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the questions, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. See Arbor Hill, *supra* at 186 n.3, 190.

In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits; this is known as the "forum rule." See Simmons, *supra* at 174-75 (recounting history of the forum rule); see also Arbor Hill, *supra* at 191 ("We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.").

Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. See Arbor Hill, *supra* at 190. With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983). The Court must review these time records and the hours an attorney billed to determine their reasonableness and, in doing so, the Court must examine the value of the work product, and "exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 2009). Ultimately, "a fee award should be based on scrutiny of the unique circumstances of each case . . . ." McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 426 (2d Cir. 2010) (citations omitted).

As discussed below, both the hourly rates which the Plaintiffs are seeking to have the

Court apply in recovering attorney's fees as well as the number of hours of work for which

Plaintiffs seek recovery is excessive and should be drastically reduced.

2.   The Troy Firm Is Already Known by this Court to Make Excessive Claims For Fees

In 2017, this Court, in She Jian Guo v. Tommy's Sushi, Inc., 2016 U.S. Dist LEXIS

14428 at *12-*13 (SDNY 2016) made the following observation regarding the Troy law firm

attorneys fees request:

**1. Reasonableness of Counsel's Claimed Hourly Rates**
The billing rates requested for most of the timekeepers in this case exceed the rates
generally awarded in this District. ... the Court, in a separate FLSA action, recently
reviewed the reasonableness of the rates claimed by five of these timekeepers and found
that each of them warranted reduction. See Run Guo Zhang v. Lin Kumo Japanese Rest.
Inc., No. 13 Civ. 6667 (PAE), 2015 U.S. Dist. LEXIS 115608, 2015 WL 5122530, at *2-
3 (S.D.N.Y. Aug. 31, 2015). The same conclusion follows here.

As to Troy, in Lin Kumo, the Court found an hourly rate of $300 appropriate in light of
(1) rates typically commanded by similarly experienced partners in FLSA actions in this
District, (2) the rates Troy himself has historically been awarded in FLSA cases in this
District, and (3) the Court's finding that the "unexceptional case was within the
mainstream of legal work in such cases." 2015 U.S. Dist. LEXIS 115608, [WL] at *3
(citations omitted); Hui Luo, 2015 U.S. Dist. LEXIS 115608, 2015 WL 1954468, at *1-2
(reducing Troy's fee to $300 per hour); see also Pascuiti v. N.Y. Yankees, 108 F. Supp.
2d 258, 266 (S.D.N.Y. 2000) (collecting cases and noting that "the range of fees in this
District for 'seasoned  civil rights litigators,' particularly those in small firms, is between
$200/hr and $300/hr"). The same reasoning supports a reduction of Troy's rate to $300
per hour here.

As to the associates, in Lin Kumo, the Court found an hourly rate of $175 reasonable
given the attorneys' recent admission to the bar and presumptively limited experience
litigating FLSA cases. 2015 U.S. Dist. LEXIS 115608, 2015 WL 5122530, at *3. Here,
too, the Court approves reduced hourly rates of $175 for Millican, Federici, Dano, and
Hernandez, each of whom was admitted to the bar in or after 2013.

This Court in Guo *Id.* continues this analysis at *15 - *18.

**2. Reasonableness of Number of Hours Expended**
The invoice also reflects various inefficiencies and excessive billing practices that justify
further reduction of the requested fee award.

First, there was no evident need for eight timekeepers, including one partner and five
associates, to work on this straightforward FLSA action. As Judge Cogan explained in a

recent FLSA action litigated by Troy Law, "[t]here is necessarily a learning curve anytime a new associate is introduced into a case, and the client should not have to pay for that." Hui Luo, 2015 U.S. Dist. LEXIS 56236, 2015 WL 1954468, at *2 (reducing fee award because case "in no way required five associates"). Accordingly, courts in this Circuit frequently apply across-the-board reductions to account for overstaffing. (citations omitted) ...

Such a reduction is warranted here. The invoice reflects a number of instances where multiple timekeepers performed tasks that could have been completed more efficiently by a single associate. For instance, it was not clearly necessary for Dano and Zhang to each spend 6.15 hours meeting with plaintiffs and collectively drafting their straightforward declarations and affidavits. See Invoice, at 9 (identical time entries for Zhang and Dano on 5/28/15 and 6/04/15). Further, on multiple occasions, Dano billed for time spent reviewing notes from conferences attended by other associates. See, e.g., Invoice, at 6 (Dano time entry for 3/09/15); id. at 7 (Dano time entry for 3/30/15). Defendants should not be required to bear the costs of such duplicative labor. (citations omitted)

Second, more than one-third of the total 328.99 hours were worked by Troy, whose timesheets reflect not only partner-level work, but also associate- and even paralegal-level work. Nowhere is this more apparent than in the time entries documenting Troy's pre-trial preparation. In addition to preparing witnesses and reviewing exhibits, Troy spent nearly seven hours performing mundane tasks such as scanning and printing documents, downloading files, and organizing binders. See Invoice, at 10-11 (time entries for 7/28/15, 7/29/15, and 7/30/15). Moreover, throughout the litigation, Troy performed similarly elementary tasks, such as reviewing the Court's individual rules, preparing letters to the Court, conducting legal research, and reviewing simple orders. See, e.g., Invoice, at 1 (billing $270 on 8/04/14 for 0.6 hours spent reviewing two-page form notice of initial pretrial conference); id. (billing $585 on 5/18/14 for 1.3 hours spent on research into property owned by defendants); id. at 12 (billing $187.50 on 8/04/15 for 0.42 hours spent reviewing Court's individual rules and creating/updating Tables of Contents and Authorities). As the Court held in Lin Kumo, "[a]lthough [ ] Troy is at liberty to decide how to use his time and manage his cases, it is not appropriate, for purposes of gauging the reasonable fee award, to assign partner-level billing rates to tasks that [one of the many] first-or second-year associate[s] [on the case] could easily perform." 2015 U.S. Dist. LEXIS 115608, 2015 WL 5122530, at *2.4

The Court also finds that Troy spent an excessive number of hours performing relatively straightforward tasks. For instance, there was no justification for Troy to spend 2.2 hours, billing $990, reviewing defendants' one-sentence Rule 7.1 Statement and 14-page pro forma Answer. (citations and discussion of other cases omitted)

...

To account for these inefficiencies, and having considered the reductions applied in similar cases, the Court reduces the hours billed by Troy Law by 40%.

As discussed below in this memorandum, the hourly rates applied, and the hours of work for which the Troy law firm in this case seeks to recover should be drastically reduced for the same reasons just mentioned in the excerpt from the Guo opinion just quoted as well as the additional reasons which we discuss below.

Similarly, the District Court, in Chen v. Shanghai Tan Rest., Inc., 2017 U.S. Dist. LEXIS 36545 at *34- *35 (EDNY 2017), in ruling to make a substantial reduction in the fees to be awarded to the Troy law firm with respect to a wage and hour case, made the following observation regarding the Troy law firm:

> Several courts have previously concluded, in separate FLSA actions filed by the Troy firm, that the requested billing rates for most of the timekeepers in this case exceed those generally awarded in this District—and even in the Southern District of New York, where rates are traditionally higher. See, e.g., Guo, 2016 U.S. Dist. LEXIS 14428, 2016 WL 452319, at *4-5; Zhang v. Lin Kumo Japanese Rest., Inc., No. 13 Civ. 6667 (PAE), 2015 U.S. Dist. LEXIS 115608, 2015 WL 5122530, at *2-3 (S.D.N.Y. Aug. 31, 2015); Luo, 2015 U.S. Dist. LEXIS 56236, 2015 WL 1954468, at *2-3. In Guo, a Southern District case, the court applied an hourly rate of $300 for Troy's services "in light of (1) rates typically commanded by similarly experienced partners in FLSA actions in this District, (2) the rates Troy himself has historically been awarded in FLSA cases in this District, and (3) the Court's finding that the unexceptional case was within the mainstream of legal work in such cases." 2016 U.S. Dist. LEXIS 14428, 2016 WL 452319, at *5 (internal quotation marks and citations omitted). Similarly, the court in Guo applied an hourly rate of $175 for Millican, Federici, Dano, and Hernandez, citing their "recent admission[s] to the bar and presumptively limited experience litigating FLSA cases[,]" and a $150 hourly rate for Bhuiyan.
>
> …
>
> Moreover, plaintiffs' counsel's disappointing performance in this case independently warrants a reduction in the requested hourly rates. Counsel's errors varied in degree. Some were minor, careless mistakes, such as the previously mentioned discrepancies concerning plaintiffs' genders, the dates of Chen's employment, and the number of hours that Qin worked at the restaurant. See supra notes 11-14. But, as noted above, plaintiffs' counsel also inexplicably failed to address successor liability in the memorandum of law supporting this motion, despite requesting relief premised on such a theory and having long ago been alerted to its significance… Moreover, plaintiffs' fee application lacks necessary (and routine) supporting materials, despite plaintiffs' counsel's having been admonished by other courts for failing to provide the same. Accordingly, the work performed by plaintiffs' counsel does not warrant an hourly rate at the higher end of the range accepted in this District, and the Court respectfully recommends that plaintiffs be

awarded fees at hourly rates of $300 for Troy; $175 for Millican, Federici, Dano, and Hernandez; and $150 for Bhuiyan.

...

Accordingly, the Court respectfully recommends that plaintiffs be awarded an hourly rate of $100 for Byun. [Note that Byun is one of the attorneys who performed work in this Li v. Chinatown Takeout case and for whom Mr. Troy is seeking $250 per hour].

3.   The Hourly Rates for Which the Plaintiffs Seek Recovery is Excessive

A.      Recent Court Decisions Limited the Fees to Troy, Byun and Schweitzer.   The attorneys working on this case were John Troy, George Byun, Joseph Indelicato and Aaron Schweitzer.  Plaintiffs seek to recover $450 per hour for Mr. Troy's work on this case and $250 per hour for each of the associate's hours of work on this case.  In addition, Plaintiffs seek to recover $150 per hour for the work of the following two individuals who are not attorneys, Maggie Huang, a CPA, and Bella Yingchu Ho, a legal assistant.

As discussed below, these hourly rates Plaintiffs seek to have applied to these individuals are excessive. In Guo, the Court reduced Mr. Troy's hourly rate from the $450 per hour he requested to $300 per hour, and reduced the hourly rate for Byun (who was admitted to practice law in 2016[4]) from the requested rate of $250 per hour to $100 per hour, based on Byun's limited experience.  There is no reason why this Court should increase the hourly rate this Court applied to these attorneys in Guo.

Furthermore, Schweitzer, who was admitted to the bar just a few months ago, on May 16, 2018[5], should certainly not have a rate of more than $100 per hour approved by the Court. Joseph Indelicato, who was also admitted to the bar just recently, in 2017[6], should similarly not have an hourly rate exceeding $100 per hour approved for his work.

---

[4] See paragraph 30 of the Troy Declaration.
[5] See paragraph 46 of the Troy Declaration.
[6] See paragraph 40 of the Troy Declaration.

The paralegal and accountant working on the case should be entitled to, at most, $75 per hour to the case. *See, e.g.,* Sanchez v. Jyp Foods, Inc., 2018 U.S. Dist. LEXIS 161120 (SDNY 2018) (paralegals given a $75 per hour rate when calculating fees).

Thus, as a starting point in our analysis of hourly rates assigned to the attorneys working on this case, the most that should be assigned to each attorney is an hourly rate of $300 to Mr. Troy, $100 to each of the associates working on the case and $75 per hour for the non-attorneys working on this case. As discussed below, there are several reasons why these hourly rates should be reduced even further in this case.

B.     Troy's Work Performance in this Case Was Poor.     The Court in Chen v. Shanghai Tan Rest., Inc., 2017 U.S. Dist. LEXIS 36545 at *34- *35 (EDNY 2017), which we discussed in Section 2 of this memorandum of law, also stated that, in determining the amount of attorney's fees to award Plaintiff, the court is to look at the quality of the work done by the attorney. While it is not my place to weigh in with my opinion as to quality of the work performance of Plaintiffs' attorneys on the case generally, I believe it is objectively clear that an attorney who argues with the judge in middle of a trial on several occasions, particularly after being warned by the judge that such behavior will not be tolerated, is not doing a good job in representing his clients, as arguing with the judge can potentially harm his client's case.

In the present case, this is what Mr. Troy actually did at the trial. See the Court's reactions to Mr. Troy's behavior during the trial at page 126, line 7 through page 127, line 17 of the trial transcript (We are attaching the excerpts of the trial transcript referred to in this section of the memorandum of law as Exhibit B.)

> THE COURT: That's not what, whoa, whoa, whoa. Mr. Troy, you are changing the testimony, because what he said … That's not what he testified.
>
> MR. TROY:  Your Honor

THE COURT:  So sit, Mr. Troy.  I'm not having this conversation right now.

MR. TROY:  The testimony –

THE COURT:  Mr. Troy, sit down.  Mr. Troy, sit down.

                    …

MR. TROY:  Your Honor.

THE COURT:  Mr. Troy, stop.  Mr. Troy, sit down or you're going to be in contempt of court right now.  Sit down

MR. TROY:  Your Honor.

THE COURT:  Sit down.

MR. TROY:  Your Honor.

THE COURT:  Mr Troy, sit down.

                    …

THE COURT:  Okay.  Mr. Troy, don't interrupt anymore.

Notwithstanding this rebuke by the Court in this exchange, a short time later in this trial,

Mr. Troy again behaved in a manner that raised the ire of the Court.  At page 140, lines 10

through 15 the Court reacted to Mr. Troy with the following statement:

THE COURT:  Mr. Troy, please stand.  I find your behavior earlier to be unacceptable, unprofessional and disrespectful to me and this Court.  I will not tolerate this in the future.
          I also suspect that one of the things you're trying to do when you do those objections is coach your witness in the stand.  I will not tolerate that.

Notwithstanding this second rebuke by the Court, Mr. Troy continued with his similar

bad behavior to the Court later on in the trial, where there was the following back and forth

following the Court sustaining my objection to a question asked of Defendant's witness, at page

199, line 7 to page 200, line 1:

MR. WEINREB: Objection.

THE COURT:  Sustained.

MR. TROY:  Your Honor, can we know why there is the reason for –

THE COURT:  It's irrelevant.  Move on.

MR. TROY:  Your Honor, we are entitled to know what is the reason because –

THE COURT:  Mr. Troy.

MR. TROY:  We have to know whether or not we have right.

THE COURT:  Mr. Troy.

MR. TROY:  To our objection.

THE COURT:  Mr. Troy. Sit down right now.  Sit down. You asked for the reason, I gave you the reason.  The reason was relevance.  I said it was irrelevant.  That was the reason.
      You get up with an outburst once again I'm going to ask you to leave the courtroom.  Listen to my answers, because I gave you the answer.  And when I ask you to sit down, you need to sit down and stop talking over me.  The disrespect you show me is unacceptable.

By behaving in this manner at trial, Mr. Troy jeopardized his clients' case.  Accordingly, his hourly rate, which we state in the last paragraph should be, at most, $300 per hour, should be reduced further to reflect this bad representation. *See, e.g.,* Chen, *supra* at *34-*35 ("plaintiffs' counsel's disappointing performance in this case independently warrants a reduction in the requested hourly rates.")

C.    <u>Travel Should be Charged at the Rate of 50% of the Hourly Rate</u>

This Court recently ruled in <u>Callender v. Panabori Foods </u>Corp, 2018 U.S. Dist. LEXIS 122950 (SDNY 2018), that attorneys are typically compensated at the rate of 50% of their reasonable hourly rates spent in travelling.  In the present, the attorneys for Plaintiffs charged their travel time at their full rate.

As can be seen from the Time and Billing Records (hereinafter referred to as the "timesheets") provided by Plaintiffs along with this motion (which timesheets are attached to Plaintiffs' motion papers as Exhibit 1), much time was spent by Plaintiffs' attorneys travelling to and from the courthouse for trial and for conferences. The Plaintiffs billed this travel time at the same rate that they sought to bill their other work; Mr. Troy sought $450 per hour for his travel time and sought $250 for the travel time for each of the associates.

For example, 4 hours of time at the rate of $250 per hour was charged with respect to associate Joseph Indelicato on June 26, 2017, with a minute entry of "Travel to, from and attend IPTC at SDNY – White Plains Court," without breaking out what part of this was travel. Since most of the Court conferences last for less than a half hour, it is safe to assume that at least 3 ½ hours of this time related to travel. Mr. Indelicato's travel time should have been billed at the hourly rate of $125 (assuming Plaintiffs' associate hourly rate of $250 per hour applies).

Similarly, on April 4, 2017, Mr. Troy has an entry billing 5.90 hours for the "Mediation and back and forth." He billed himself out at $450 per hour for all 5.90 hours. He does not break out which portion of this time was travel and what portion was mediation. As he traveled from Queens to the mediation, it is likely that more than half this time was travel time. Assuming, 3.5 hours of this time was devoted for travel (as explained in the previous paragraph), he should have billed those 3.5 hours at the rate of $225 per hour instead of at $450 per hour.[7]

In addition, Mr. Troy had the following entries on his timesheets that included travel, but did not allocate a 50% billing rate to such travel: Mr. Troy has an entry dated November 2, 2017, charging 5 hours of time at the rate of $450 per hour for "Mediation and back and forth

---

[7] We are using the $450 figure here to make our point relating to reducing the amount of the fee since this is the fee Mr. Troy allocated to himself on his timesheets for his time. However, we maintain that the maximum fee to be allocated to Mr. Troy is $300 per hour, as discussed above. As such, Mr. Troy's travel time should be credited at most at the rate of $150 per hour and the associate's fees should be credited at most at the rate of $75 per hour.

from White Plains."   Mr. Troy also has an entry dated November 7, 2017 for John Troy charging 9 hours at the rate of $450 relating to depositions taken in White Plains with a notation that this time includes "travel to and from White Plains."   Mr. Troy further has an entry for March 14, 2018 in which he charges 4 hours for a "Status conference with MJ McCarthy & Weinreb + travel."   He has another entry on May 3, 2018 charging 4 hours at the rate of $450 per hour with the notation of "Status Conf with MJ McCarthy & Weinreb = travel." It can be assumed that 3.5 hours of each of these Court conferences related to travel and that a significant portion (presumably the same 3.5 hours a day for each of the mediation sessions, related to travel.) Thus, he should have charged the rate of $225 per hour for these additional 14 hours in this paragraph, instead of charging $450 per hour for these hours.

Similarly, each of John Troy and Aaron Schweitzer billed 3.80 for the first day of the trial, on August 22, 2018, during which Aryeh Meiteles testified and billed 10.80 for the second day of the trial on August 27, 2018.  It is clear that, while only the notation, "Trial (testimony of Aryeh Meiteles)" and "trial," is set forth on their description of these two days of trial, this time included travel time for each of these two attorneys for each of these two dates.  Thus, assuming that there was 3.5 hours of travel each day of trial, Mr. Troy billed his full rate of $450, and Mr. Schweitzer billed his full rate of $250 for the seven hours of travel over those two days, instead of billing these amounts at $225 and $125, respectively, as required by case law.

Thus, Mr. Troy has 7 days during which he billed 3.5 hours of his travel that day at his full hourly rate, Mr. Indellicato has one day during which he billed 3.5 hours of his travel at his full hourly rate and Mr. Schweitzer had 2 days in which he billed 3.5 hours of his travel at his full hourly rate.  Thus, 24.5 hours at the rate of $450 per hour should be removed from Mr. Troy, 3.5 hours should be removed from Mr. Indelicato's time at the rate of $250 per hour and 7 hours

should be removed from Mr. Schweitzer at the rate of $250 per hour and these removed hours should instead be charged by the Court at 50% of the rate the Court determines these attorneys are entitled to be billed for purposed of calculating attorneys fee.

4. The Hours Expended by the Attorneys in this Case Was Unreasonable

As was the situation with the Troy law firm in Guo, *supra,* discussed above in this memorandum, the invoice in this case also "reflects various inefficiencies and excessive billing practices [by the Troy firm] that justify further reduction in the requested fee award." In Guo, as a result of these inefficiencies, the Court reduced the already reduced legal fees (on account of the reduction of the hourly rate to paid with respect to each Troy attorney), an additional 40% reduction in the total legal fees recovered on account of these inefficiencies. The inefficiencies and excessive billing practices in this case by the Troy law firm are as follows:

A. Multiple Timekeepers in this Case Resulted in Inefficiency.    Judge Cogan pointed out in Hui Luo, 2015 U.S. Dist. LEXIS 56236, a case litigated by Troy Law, "there is no evident need for eight timekeepers, including one partner and five associates, to work on a straightforward FLSA action" and that there is necessarily a learning curve anytime a new associate is brought into the case and the client should not have to pay for that. Judge Cogan therefore reduced the fee award.

Similarly, in our case, it was not warranted to have a partner and three associates work on this straight forward FLSA/NYLL case and Defendants should not have to pay for the time that each of these additional needed to spend to get up to speed on the case. Thus, a further reduction is warranted to compensate for these inefficiencies.

B. Much of Mr. Troy's Work Was Entry Level.

Another point made in Guo was that "more than one-third of the total 328.99 hours were

worked by Troy, whose timesheets reflect not only partner level work, but also associate – and even paralegal level work."

In the present case, the percentage of the work allocation to John Troy is even greater than in Guo.  In our case, Mr. Troy billed more than half of the attorney hours in this case, as he billed approximately 55% of the hours in this case, since he billed 144.1 hours in this case while the three associates billed at total of 116.3 hours in total.

Furthermore, a review of the timesheets shows that the time expended by Mr. Troy in this case included much associate and even paralegal level work.  Defendants should not be charged at partner rates for this low level work done by Mr. Troy.

The Court pointed this out in Guo, in which the Court stated

Nowhere is this more apparent than in the time entries documenting Troy's pre-trial preparation. In addition to preparing witnesses and reviewing exhibits, Troy spent nearly seven hours performing mundane tasks such as scanning and printing documents, downloading files, and organizing binders. See Invoice, at 10-11 (time entries for 7/28/15, 7/29/15, and 7/30/15). Moreover, throughout the litigation, Troy performed similarly elementary tasks, such as reviewing the Court's individual rules, preparing letters to the Court, conducting legal research, and reviewing simple orders. See, e.g., Invoice, at 1 (billing $270 on 8/04/14 for 0.6 hours spent reviewing two-page form notice of initial pretrial conference); id. (billing $585 on 5/18/14 for 1.3 hours spent on research into property owned by defendants); id. at 12 (billing $187.50 on 8/04/15 for 0.42 hours spent reviewing Court's individual rules and creating/updating Tables of Contents and Authorities).

Similarly, in our case, reviewing the time entries for Mr. Troy shows much low-level work performed by him.  For example, on September 8, 2016, Mr. Troy billed .9 hours to prepare a retainer agreement.  Then, on September 26, 2016, Mr. Troy has several entries totaling 7.6 hours researching inter alia, property addresses, Defendants' website, Defendants business, vehicles, etc.  On September 29, he spent more than ten hours preparing and filing the summons and complaint, even though such summons and complaint is mostly a markup of a boilerplate that he probably used in the other hundreds of wage and hour cases that he has

handled over the years; besides the fact that this drafting could easily have been done by a paralegal, he did this drafting himself, and spent too much time doing so.  Similarly, on October 7, 2016, he charged an hour of time to review the individual practices of Judge Carter and Magistrate Judge Gorenstein.  He also repeatedly billed .10 hours for reviewing short orders issued by the Court, for example an order issued on January 20, 2017 adjourning a joint status report and another order adjourning a joint status report on February 1, 2017.  *See also* entries reviewing orders on 5/9/17 and 5/10/17); nothing should be charged for these "reviews" as such order can be reviewed in seconds.  On May 3, 2017, Mr. Troy charged .4 of an hour to review my one page Notice of Appearance.  These are just a few examples of overreporting of time, and billing for low level time; the timesheets are replete with similar charges of time for Mr. Troy such as these just mentioned.

As a result of the foregoing, after reducing Mr. Troy's hourly rate to $300 or less as discussed above in this memorandum of law, Mr. Troy's requested fees should be further reduced by an additional 40% as was done in <u>Guo</u> and other cases Mr. Troy litigated.

C.    <u>The Legal Fees Should be Further Reduced on Account of Just Partial Success.</u>

The United States Supreme Court observed that "the most critical factor" in a district court's determination of what constitutes reasonable attorney's fees in a given case "is the degree of success obtained" by the plaintiff.   <u>Farrar v. Hobby</u>, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

The Second Circuit, in <u>Barfield v. New York City Health and Hospitals Corp.</u>, 537 F. 3d 132 (2d Cir. 2008) upheld a 50% reduction in attorney's fees in a case in which the Plaintiffs attempted, but were unsuccessful, in certifying a collective action.

In our case, as well, Plaintiffs attempted to get collective certification drafting the

complaint and filing a motion to accomplish this, but Plaintiffs were unsuccessful. See the filing by Plaintiffs of a motion to certify a class at docket entries 39 -41 and the Court's denial of such motion at docket entry 59.

Furthermore, as described in the Preliminary Statement above, Plaintiffs were for the most part unsuccessful in recovering overtime pay, as the Court awarded them just about 35% of the overtime pay they sought, in essence concluding that the Plaintiffs put in 65% less overtime then they claimed. In addition, as discussed above, Plaintiffs failed to recover spread of hour wages they sought since the Court agreed that the Plaintiffs worked just 9 hours each day.

A district court's assessment of the degree of success achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims. Both the quantity and quality of the relief obtained, as compared to what the plaintiff sought to achieve, are key factors in determining the degree of success achieved. Barfield, *supra* and Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 164, 2018 U.S. Dist. LEXIS 153740 at 177, footnote 8 (SDNY 2018).

In the present case, Plaintiffs were unsuccessful in their attempt to have the case proceed as a collective action. They also were totally unsuccessful with respect to their claim for spread of hour pay and were about 65% unsuccessful with respect to overtime pay (and the liquidated damages relating to such overtime pay. Thus, their attorney's fee award should be further reduced accordingly.

Since Barfield, *supra,* upheld a 50% reduction based on the attorneys' failure to have the case proceed as a collective action, and the fact that Plaintiffs, in this case, in addition were to a large extent unsuccessful in this case as to the amount of their recovery, this should justify a much larger percentage additional reduction in the attorney's fees in this case than in Barfield, such as, perhaps, an additional reduction of 75% or 80% of the reduced attorneys fees.

D. Fees Should be Reduced on Account of Permitting Perjury.

In Gamero v. Koodo Sushi Corp., 328 F. Supp 3d 165, 2018 U.S. Dist LEXIS 153740 at *178 (SDNY 2018) the Court reduced an attorney's fee award by an additional 35% (besides the other reductions in the fees that were made on account of other reasons in that case) because the attorney permitted the client to perjure himself, thus "permitting the client to subvert the trial process."

In the present case, as well, since it was obvious that the Plaintiffs perjured themselves repeatedly at trial (an issue we discuss at length in our motion to alter or amend the judgment pending before the Court) – for example relating to their claim that they worked at the restaurant on the days the restaurant was closed for the Jewish holidays, and that they were driven to the restaurant by Mrs. Meiteles, an Orthodox Jew, on the Jewish holidays, etc.), they should be precluded from recovering the attorneys fees they requested. (In our motion to amend the Judgment, we request that the perjury should prevent Plaintiffs from recovering any damages.)

5.    Costs to be Denied because Support for such Costs were Not Provided.    This Court recently ruled in Sanchez, supra at * 48-49, that, "while the Court takes judicial notice of the $400 filing fee … it will not award costs for service of process, postage and photocopying and translator services, without supporting documentation." The opinion cited to other recent decisions by this Court that reached the same conclusion.

Accordingly, in the present case, since the Plaintiffs have not produced any documentation to support its request for costs, the Court should award costs in the amount of, at most, $400. (Obviously, if the Court agrees with our motion to alter or amend the judgment that the Plaintiffs are not entitled to recover anything, or is not the prevailing party, then the Plaintiffs should be entitled to recover no costs at all.

6.    The Maximum Attorney's Fee Should Not Exceed 1/3 of the Recovery

Courts in this District have consistently ruled that, although the lodestar method is applied in computing the attorney's fees award, the Court would usually not award fees exceeding 1/3 of the recovery. *See, e.g.,* Zhang v. Lin Kumo Rest., Inc., 2015 U.S. Dist. LEXIS 115608, at *4 (SDNY 2015) and Lazo v. Kim's Nails at York Ave., 2018 U.S. Dist LEXIS 218107 (SDNY 2019).

In the present case, the attorneys for Plaintiffs did not produce a copy of the fee agreement they entered into with the Plaintiffs. It should therefore be presumed that the fee agreement with the Plaintiffs was a contingency fee arrangement with the contingency fee of 33.33% of the recovery, since it is unlikely that the Plaintiffs in this case could afford to pay the hourly rates charged by the Troy law firm.

Therefore, even assuming that the Court does not eliminate attorney's fees completely in this case, or if the Court does not reduce such fees to the extent we request in these opposition papers, the most that the Troy law firm should be able to recover is 1/3 of the damages awarded by the Court in this case. This amount is substantially less than the $93,990.00 sought by them in this case.

7.    If Our Pending Motion to Alter/Amend Judgment is Granted, There May be No Attorneys Fee Award ; Offer of Judgment Was Served in June 2017

Defendants have pending before this Court a Motion to Alter or Amend Judgment, filed with the Court on January 3, 2019, pursuant to which Defendants seek to have the Judgment set aside, or revised to significantly reduce the damages award. If this motion is granted by the Court, this may result in no attorneys' fees, or significantly reduced damages, being payable by Defendants.

Were the Court to amend the Judgment in accordance with our pending motion, then, besides having reduced damages resulting in lower attorney's fees on account of a ruling by the Court that the Defendants have much less liability than set forth in the Judgment, the attorney's fees Plaintiffs are seeking to recover may be further reduced or eliminated on account of an offer of judgment served by Defendants on the Plaintiffs earlier in this case.

On June 7, 2017, Defendants served Plaintiffs with an Offer of Judgment pursuant to FRCP Rule 68, in which the Defendants offered Plaintiffs $85,000 to settle the case.  A copy of this Offer of Judgment is attached hereto as Exhibit C.  Pursuant to the FRCP, if the Plaintiffs fail to recover at trial an amount exceeding $85,000, Plaintiffs are liable for attorney's fees and costs since the time of the offer, pursuant to FRCP 68 (d).  See Adsani v. Miller, 139 F.3d 67, 72 (2d Circuit 1998)(attorney's fees are included in costs awarded for purposes of Rule 68). Defendants would not be required to pay for any of Plaintiffs' attorney's fees after that date, and Plaintiffs would be responsible for Defendants' costs and attorney's fees after such date.

Therefore, should the Court grant our motion to reduce the damages in this case to an amount that does not exceed $85,000, Defendants will not be responsible for any attorney's fees in this case.

CONCLUSION

In light of the foregoing, we respectfully request that the Court not award Plaintiffs any attorney's fees in this case, or should drastically cut the attorney's fees on account of the arguments we have set forth in this memorandum of law.

As a starting point, Mr. Troy should not have assigned an hourly attorney fee rate of more than $300, the associates should not have an assigned rate of more than $100 and the non-attorneys should not have an assigned hourly rate of more than $75.  These assigned fees should be reduced substantially on account of Mr. Troy's poor work performance in this case, travel should be charged at 50% of the attorney fee rate, multiple timekeepers resulting in inefficiency, Mr. Troy performing entry level and paralegal work, partial success by Plaintiffs, attorneys permitting perjury by the Plaintiffs and other factors set forth in this memorandum.

Finally, Plaintiffs should be denied a recovery of costs, other than the $400 filing fee, since Plaintiffs failed to provide documentation substantiating such costs.

Respectfully Submitted

Bernard Weinreb
on behalf of the Defendants