UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SHANFA LI, *on behalf*
*of himself and others similarly situated*,

                            Plaintiff,                       **OPINION AND ORDER**

      -against-                               16 Civ. 7787 (JCM)

CHINATOWN TAKE-OUT INC.,
d/b/a/ China Town Take Out; and
YECHIEL MEITELES,
                             Defendants.
------------------------------------------------------X

      On August 22 and 27, 2018, the Court held a bench trial in which Plaintiffs Shanfa Li and

Guiming Shao ("Plaintiffs") alleged violations of the Fair Labor Standard Act ("FLSA") and

New York Labor Law ("NYLL").[1]  On December 4, 2018, the Court issued its findings of fact

and conclusions of law pursuant to Fed. R. Civ. P. 52(a), finding for Plaintiffs and awarding

damages for unpaid wages, statutory violations under the NYLL, and interest. (Docket No. 80).

Before the Court are Plaintiffs' motion to amend the judgment, (Docket No. 82), Defendants'

motion to alter the judgment, (Docket No. 93), and Plaintiffs' motion for attorneys' fees, (Docket

No. 86).  For the reasons set forth below, Plaintiffs' motion to amend the judgment is granted,

Defendants' motion to alter the judgment is denied, and Plaintiffs' motion for attorneys' fees is

granted in part and denied in part.

## I.  BACKGROUND

      On September 29, 2016, Plaintiff Shanfa Li initiated the instant action against Chinatown

Take-Out Inc. ("Chinatown Take-Out") and Yechiel Meiteles (collectively, "Defendants")

---

[1] This action is before the undersigned for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 36).

seeking damages under the FLSA and NYLL for wage-and-hour violations during his employment at Chinatown Take-Out. (Docket No. 1). On November 29, 2016, Plaintiff Guiming Shao filed a consent to become a plaintiff. (Docket No. 7).

On August 22 and 27, 2018, the undersigned presided over a bench trial during which the parties were afforded a full opportunity to be heard. During trial, the Court heard testimony from Li, Shao, Yechiel Meiteles, Yehuda Meiteles, and Aryeh Meiteles. Following trial, the parties submitted post-trial memoranda of law.[2] (Docket Nos. 76–77). On December 4, 2018, the Court issued its findings of fact and conclusions of law. (Docket No. 80). The Court found in favor of Plaintiffs and directed the Clerk to enter judgment against Defendants, jointly and severally, in the following amounts: (1) $119,886.88 to Guiming Shao, which included: (i) $11,300 in unpaid regular wages, (ii) $44,893.44 in unpaid overtime wages, (iii) $2,500 in statutory damages for wage notice violations under the NYLL, (iv) $5,000 for wage statement violations under the NYLL, and (v) $56,193.44 in liquidated damages; and (2) $30,185.84 to Shanfa Li, which included: (i) $1,950 in unpaid regular wages, (ii) $8,142.92 in unpaid overtime wages, (iii) $5,000 in statutory damages for wage notice violations under the NYLL, (iv) $5,000 for wage statement violations under the NYLL, and (v) $10,092.92 in liquidated damages. (*Id.*). The Court further awarded Plaintiffs prejudgment and post-judgment interest, and directed Plaintiffs to make their motion for attorneys' fees and costs pursuant to Fed. R. Civ. P. 54(d). (*Id.*). On December 6, 2018, the Clerk of Court entered judgment in favor of Plaintiffs. (Docket No. 81).

---

[2] The parties also submitted proposed findings of fact and conclusions of law prior to trial. (Docket Nos. 74–75).

## II. PLAINTIFFS' MOTION TO AMEND

Plaintiffs request that the Court amend the judgment pursuant to Fed. R. Civ. P. 60(a) to include language from the late payment provision under NYLL §198(4). (Docket No. 82). Defendants did not respond to Plaintiffs' request, therefore, the Court deems this motion unopposed.  Pursuant to § 198(4), "'if any amounts [of damages awarded under the NYLL] remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.'" *Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *36 (S.D.N.Y. June 9, 2016) (quoting NYLL § 198(4)).  Accordingly, because the Court awarded Plaintiffs damages under the NYLL, Plaintiffs' motion to amend the judgment is granted and the amount of judgment will automatically increase if the conditions set forth in § 198(4) are met.[3]

## III. DEFENDANTS' MOTION TO ALTER OR AMEND

Defendants request that the Court alter or amend the judgment under Fed. R. Civ. P. 52(b), 59(e), or 60(b)(3), on two principal grounds.  First, Defendants maintain that Plaintiffs' testimony should not have been credited because they committed perjury and are "proven liars." (Def. Br.[4] at 6–19, 23–24).  Second, Defendants contend that Plaintiffs' damages should be reduced because: (i) Plaintiffs' meal breaks were not compensable; and (ii) Plaintiffs are only entitled to the difference between their regular rate of pay and their overtime rate for all overtime hours worked. (*Id.* at 13–15, 18–19, 20–23).

---

[3] Pursuant to Fed. R. Civ. P. 60(c)(2), Plaintiffs' motion "does not affect the judgment's finality or suspend its operation."

[4] Refers to Defendants' memorandum of law in support of their motion to alter or amend the judgment. (Docket No. 96).  Citations to the parties' briefs refer to the ECF page number.

A motion to alter the judgment pursuant to Rule 59(e) may be granted "only if the movant satisfies the heavy burden of demonstrating 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Hollander v. Members of the Bd. of Regents of the Univ. of the State of N.Y.*, 524 Fed. Appx. 727, 729 (2d Cir. 2013) (citations omitted). A motion to alter the judgment is an "extraordinary remed[y] to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (citations and quotations omitted). The Court will not grant a Rule 59(e) motion "unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (citations and quotations omitted).

"The purpose of post-judgment motions under Rule 52(b) is to give the district court an opportunity to correct manifest errors of law or fact at trial, or in some limited situations, to present newly discovered evidence." *United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 831 F. Supp. 167, 169 (S.D.N.Y. 1993). However, a motion to amend under Rule 52(b) should not be used to introduce evidence that was available at trial. *Id.* Moreover, "[t]he standards governing motions for amendment of findings under Rule 52(b), [and] motions to alter or amend a judgment pursuant to Rule 59(e) . . . are the same." *Wechsler v. Hunt Health Sys.*, Ltd., No. 94 Civ. 8294 (PKL), 2004 WL 2210261, at *2 (S.D.N.Y. Sept. 30, 2004) (internal quotation marks and citation omitted).

The Court may also grant a party relief from a judgment under Rule 60(b) where there has been "fraud, . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "Such a motion is addressed to the sound discretion of the trial court and may only be

granted on a showing of exceptional circumstances." *Prince of Peace Enterprises, Inc. v. Top Quality Food Mkt., LLC*, 496 F. Supp. 2d 354, 356 (S.D.N.Y. 2007). "In evaluating a Rule 60(b) motion, the courts of this circuit also require that the evidence in support of the motion be highly convincing, that the movant show good cause for the failure to act sooner, and that no undue hardship be imposed on the other parties as a result." *Id.*

## A. Credibility of Trial Witnesses

Defendants' arguments regarding Plaintiffs' credibility do not provide a basis for altering or amending the judgment under Rules 52(b) or 59(e). During a bench trial, "[i]t is within the province of the district court as the trier of fact to decide whose testimony should be credited." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012). Moreover, Defendants failed to keep accurate and complete records of the hours Plaintiffs worked and the amounts they were paid. Thus, the Court was required to make its findings based on the totality of the evidence and the *Anderson* burden shifting scheme, which permits an employee to show that he was underpaid by offering a reasonable estimate of his damages. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011); *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 371 (S.D.N.Y. 2014) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). The Court credited Plaintiffs' testimony over Defendants' where it found that Plaintiffs' testimony established their claims "as matter of just and reasonable inference." *McGlone*, 49 F. Supp. 3d at 371. Conversely, the Court reduced Plaintiffs' compensable hours where their testimony did not sufficiently show the amount and extent of their claimed work. *Id.* Furthermore, Defendants already presented these arguments in their post-trial memorandum, (Docket No. 77), which the Court already considered. Defendants' contentions regarding Plaintiffs' credibility "simply rehash the issues that were litigated and decided at trial," and do not support relief under Rules 59(e) or 52(b). *Tran v. Tran*, 166 F. Supp. 2d 793, 798 (S.D.N.Y. 2001).

Defendants submitted affirmations from Yehuda and Yechiel Meiteles, (Docket Nos. 94–95), which are more argumentative than factual and do not provide new evidence that requires amending the judgment. Yechiel Meiteles' affirmation, for example, claims that the Court misunderstood his trial testimony about Plaintiffs' meal breaks because English is his second language. (Docket No. 94). This does not constitute "newly discovered evidence" under Rule 52(b) because Defendants elicited subsequent testimony at trial clarifying Mr. Meiteles' statements. (Trial Transcript at 253–54). In addition, Defendants knew that English was not Mr. Meiteles' native language prior to trial, but chose not to use an interpreter. Moreover, it did not appear to the Court that Mr. Meiteles had any difficulty understanding the questions posed to him.

Furthermore, to prevail on a Rule 60(b) motion based upon a fraud upon the court, Defendants "must show by clear and convincing evidence 'fraud which seriously affects the integrity of the normal process of adjudication.'" *Fitzgerald v. Field*, No. 97 Civ. 5564 (RPP), 1998 WL 152575, at *3 (S.D.N.Y. Apr. 1, 1998) (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988)). Defendants argue that Plaintiffs committed perjury by testifying that they worked at Chinatown Take-Out during Jewish holidays. (Def. Br. at 23). At trial, Defendants introduced evidence that Chinatown Take-Out operated under strict Glatt Kosher rules requiring that the restaurant close for Jewish holidays. (Trial Transcript at 183–84, 211, 222). However, evidence that contradicts a witness's testimony does not establish a fraud upon the court under Rule 60(b)(3). *See Mandell v. United States*, No. 16 Civ. 1186 (PAC), 2019 WL 478100, at *4 (S.D.N.Y. Feb. 7, 2019) (citing *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972)). In support of their request for relief, Defendants cite to *Marcelino v. 374 Food, Inc.*, which was a wage-and-hour case where the plaintiff "created a timeline out of whole cloth" and

the court found that "the perjury begat the trial." No. 16 Civ. 6287 (KPF), 2018 WL 1517205, at

*21–22 (S.D.N.Y. Mar. 27, 2018). Here, even if Plaintiffs' falsely testified about their work

schedule on Jewish holidays, it did not affect the outcome of the trial or "subvert[] the integrity

of the judicial process." *Fitzgerald*, 1998 WL 152575, at *3 (citing *Gleason*, 860 F.2d at 559–

60). The Court ultimately discredited Plaintiff's testimony about the days they worked on

Jewish holidays and reduced their compensable hours.

Accordingly, Defendants' request for relief based on the credibility of Plaintiffs' trial

testimony is denied.

## B. Calculation of Plaintiffs' Damages

Defendants maintain that Plaintiffs' damages should also be reduced because: (i)

Plaintiffs' meal breaks should be discounted from the amount of compensable hours worked,

(Def. Br. at 13–15, 18–19); and (ii) Plaintiffs are only entitled to the difference between their

regular rate of pay and their overtime rate for all overtime hours worked, (*id.* at 20–23).

An employer may discount an employee's meal breaks as long as the meal break is "bona

fide," meaning that "'[t]he employee must be completely relieved from duty for the purposes of

eating regular meals.'" *Marcelino*, 2018 WL 1517205, at *17 (quoting *Salinas v. Starjem Rest.

Corp.*, 123 F. Supp. 3d 442, 472 (S.D.N.Y. 2015)). "Conversely, an 'employee is not relieved if

he is required to perform any duties, whether active or inactive, while eating.'" *Id.* (quoting 29

C.F.R. § 785.19(a)); *see Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 499 (S.D.N.Y.

2017) (noting that the NYLL and FLSA standards for determining whether meal breaks are

compensable are the same), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

Shao testified at trial that if a task needed to be performed during one of his meal breaks,

he had to stop eating and complete the task. (Trial Transcript at 96). Furthermore, Yechiel

Meiteles testified that Plaintiffs had to be in the restaurant at all times. (*Id*. at 225–26). While he

later stated that Plaintiffs were not required to work during their meal breaks, (*id.* at 253–54), he admitted that he did not observe Plaintiffs taking their breaks every day, (*id.* at 256). Moreover, the Court found that Plaintiffs spent approximately twenty minutes eating each meal, which is generally not long enough to qualify as a bona fide meal period. *See* 29 C.F.R. § 785.18 ("[r]est periods of short duration, running from 5 minutes to about 20 minutes . . . are customarily paid for as working time."). Accordingly, Defendants' motion to reduce Plaintiffs' damages based on Plaintiffs' meal breaks is denied.

Defendants next argue that Plaintiffs are only entitled to the difference between their regular and overtime rates of pay because Plaintiffs' weekly wages compensated them for their overtime hours at their regular rate of pay. (Def. Br. at 20–23). Both the "FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement." *Pinovi v. FDD Enterprises, Inc.*, No. 13-Civ. 2800(GBD)(KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015). "'An agreement for a fixed weekly salary for more than 40 hours of work per week only complies with the FLSA and [NYLL] if there is an explicit understanding between the employer and employee as to regular and overtime rates.'" *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12 Civ. 9353(PAC), 2015 WL 1881080, at *2 (S.D.N.Y. Apr. 24, 2015) (quoting *Amaya v. Superior Tile & Granite Corp.*, No. 10 Civ. 4525(PGG), 2012 WL 130425, at *1 (S.D.N.Y. Jan. 17, 2012)).

Here, the facts adduced at trial failed to establish an explicit agreement between the parties that Plaintiffs' weekly wages included compensation for overtime hours. The parties provided conflicting trial testimony regarding Plaintiffs' weekly hours and Shao's agreed upon wages.[5] Shao testified that Defendants paid him $3,000 per month in three installments of

---

[5] The parties agreed that Li was paid $650 per week. (Trial Transcript at 145, 208).

$1,000, (Trial Transcript at 90), but he did not receive information about the number of hours he would work from Defendants, (*id.* at 98). On the other hand, Yechiel Meiteles claimed Shao was paid $650 per week. (Trial Transcript at 207).[6] Both Plaintiffs testified that they generally worked from 11:00 a.m. to 10:00 p.m., Sunday through Thursday. (*Id.* at 86, 150, 153). Yechiel Meiteles, however, testified that Plaintiffs stopped work at 8:00 p.m. (*Id.* at 213–14). Defendants further maintained that Plaintiffs did not, in fact, work overtime hours. (*Id.* at 254–55); (Docket No. 77 at 15).[7] Therefore, the evidence does not support a finding that both parties explicitly and mutually understood Plaintiffs' weekly wages to include compensation for overtime hours.

While Meiteles testified that Plaintiffs' regular wages intended to compensate Plaintiffs' work from 11:00 a.m. to 8:00 p.m., (Trial Transcript at 229), Defendants failed to elicit reciprocal testimony from Plaintiffs showing that they expressly agreed to such an arrangement. *See Mauricio Ramirez v. Roka Japanese Food, Inc.,* No. 18-CV-296 (ST), 2019 WL 2372866, at *7 (E.D.N.Y. June 5, 2019) ("Even assuming that [defendant] 'talked to' [plaintiff] about overtime and herself intended for the fixed salary to include overtime compensation, this falls well short of establishing that there was an explicit agreement . . ."). Moreover, Defendants did not produce evidence setting forth the number of hours that Plaintiffs' wages intended to compensate. (Trial Transcript at 98, 147); *see Wirtz v. Harper Buffing Mach. Co.*, 280 F. Supp. 376, 381 (D. Conn. 1968) ("The important objective is assurance that the employees and the employer are aware that overtime compensation in a specific amount is included in the contract. Unless both sides clearly understand this to be so, it cannot be said with any certainty that the

---

[6] Meiteles later testified Shao's wages were increased to $700 per week. (Trial Transcript at 213).

[7] Refers to Defendants' post-trial memorandum of law.

purposes of the law in requiring additional pay for overtime work are being achieved.") (internal citations omitted).

Defendants cite to *Cazarez v. Atl. Farm & Food Inc.*, in which the court held that "where plaintiff's work schedule was relatively constant, it is reasonable to infer . . . that the parties intended for plaintiff's weekly salary to include straight time pay for each hour worked." No. 15-CV-2666(CBA)(RML), 2017 WL 3701687, at *4 (E.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017).  However, the court in *Cazarez* calculated plaintiff's overtime damages using his full overtime rate. *Cazarez*, 2017 WL 3701687, at *4.  The "critical point for an overtime claim is that the employee has an expectation of a wage for a 40–hour workweek and if he or she is required to work more than 40 hours, in the absence of . . . [an express agreement], he or she is entitled to time-and-a-half." *Francois v. Mazer*, No. 09 Civ. 3275(KBF), 2012 WL 653886, at *4 (S.D.N.Y. Feb. 28, 2012).  Here, aside from Yechiel Meiteles' own self-serving testimony, Defendants did not proffer any evidence of an express agreement between the parties regarding Plaintiff's hours worked and overtime pay. In addition, Shao did not even receive a weekly salary. (Trial Transcript at 128).  Thus, because there is insufficient evidence to rebut the presumption that Plaintiffs' wages covered only the first forty hours of work per week, Defendants' motion to alter or amend the judgment is denied.

## IV.  PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiffs seek reasonable attorneys' fees, which they are entitled to recover under the FLSA and NYLL as the prevailing party. *See* 29 U.S.C. § 216(b); NYLL § 198.  "District courts have broad discretion when awarding a fee, but must clearly explain the reasons supporting an award." *Ortega v. JR Primos 2 Rest. Corp.*, No. 15 Civ. 9183 (JCF), 2017 WL 2634172, at *6 (S.D.N.Y. June 16, 2017).  "Courts ordinarily award a lodestar fee, which is the product of the

prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively." *Id.* In assessing the reasonableness of attorneys' fees, the Court must: "(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the reasonable hourly rate by the number of hours reasonably expended to determine the presumptively reasonable fee; and (4) make an appropriate adjustment to arrive at the final fee award." *Creighton v. Dominican Coll.*, No. 09-CV-3983 (TZ), 2011 WL 4914724, at *6 (S.D.N.Y. Aug. 16, 2011). However, "[t]here is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

## A. Reasonable Hourly Rate

Plaintiffs seek fees for six individuals. (Troy Dec.[8] at 3–16). John Troy is the principal of Troy Law, PLLC, who was admitted in 1989. (*Id.* at ¶ 20). Mr. Troy requests a rate of $450 per hour. (*Id.* at ¶ 27). George Byun was an associate at Mr. Troy's firm who graduated from law school in 2015 and was admitted in 2016. (*Id.* at ¶¶ 29–30). During his time working on the instant matter, Mr. Byun was a second and third-year associate. Mr. Byun requests a rate of $250 per hour. (*Id.* at ¶ 38). Joseph Indelicato was an associate at Mr. Troy's firm who graduated from law school in 2016 and was admitted in 2017. (*Id.* at ¶ 40). During his time working on the instant matter, Mr. Indelicato was a first-year associate. Mr. Indelicato requests a rate of $250 per hour. (*Id.* at ¶ 44). Aaron Schweitzer is an associate at the firm who graduated from law school in 2016 and was admitted in 2018. (*Id.* at ¶¶ 45–46). During his time working on the instant matter, Mr. Schweitzer was a first-year associate. Mr. Schweitzer requests a rate

---

[8] Refers to the Declaration of John Troy submitted in support of Plaintiffs' motion for attorneys' fees and costs. (Docket No. 87).

of $250 per hour. (*Id.* at ¶ 53). Maggie Huang is a certified public accountant who requests a rate of $150 per hour. (*Id.* at ¶¶ 54–57). Bella Yingchu Ho is a legal assistant who requests a rate of $150 per hour. (*Id.* at ¶¶ 58–61).

The requested rates are more than the rates attorneys at Mr. Troy's firm typically receive in wage-and-hour cases. Mr. Troy highlights the number of FLSA and NYLL cases in which he is the attorney of record in support of his requested rate of $450 per hour. (Docket No. 88 at 7–14). He also refers the Court to a docket order awarding him a rate of $400 per hour. (*Id.*) (citing *Tarsem Singh, et al. v. Dany Restoration, et al.*, 17-CV-3787(JMF)). Experienced litigators and partners are commonly awarded between $300 and $400 per hour in FLSA cases within the Southern District of New York. *See Hernandez v. JRPAC Inc.*, 14 Civ. 4176 (PAE), 2017 WL 66325 at *2–3 (S.D.N.Y. Jan. 6, 2017). However, as one court noted, "Mr. Troy has been in practice since 1989 but has only been litigating wage cases since 2009," *Hui Luo v. L & S Acupuncture, P.C.*, No. 14 Civ. 1003(BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015), *aff'd*, 649 F. App'x 1 (2d Cir. 2016), and he was awarded $400 per hour in *Tarsem Singh* where there was no opposition to his fee application. Other courts in this District have not found $450 per hour a reasonable rate for Mr. Troy. *See Guo v. Tommy's Sushi, Inc.*, No. 14 Civ. 3964 (PAE), 2016 WL 452319, at *5 (S.D.N.Y. Feb. 5, 2016) (reducing Mr. Troy's requested rate from $450 per hour to $300 per hour); *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667(PAE), 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015) (same). In addition, Mr. Troy's conduct during trial was lacking and does not support the rate that he requests. (*See* Def. Ex. B);[9] *Hui Luo*, 2015 WL 1954468, at *2 (awarding Mr. Troy $300 per hour where "[t]he trial was very rough in terms of demonstrating Mr. Troy's ability to formulate questions according to

---

[9] Refers to portions of the trial transcript submitted by Defendants in opposition to Plaintiffs' motion for attorneys' fees. (Docket No. 99-2).

the rules of evidence, and the theories advanced"). Moreover, in the instant case, Mr. Troy repeatedly interrupted the Court, was disrespectful, and struggled to pose clear questions. Thus, his requested rate is too high.

As to the associates, "[g]enerally rates in excess of $225.00 per hour are reserved for FLSA litigators with more than three years' experience." *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 28 (S.D.N.Y. 2015). Rather, associates with one to three years of experience have been awarded rates ranging from $150 to $200 per hour in this District. *Id.* at 29 (collecting cases). Moreover, a court in this District recently awarded associates from Mr. Troy's firm an hourly rate of $175 and paralegals an hourly rate of $100. *See Guo*, 2016 WL 452319, at *5; *see also Zhong Fa Qin v. Sensation Neo Shanghai Cuisine, Inc.*, No. 15-CV-6399 (KAM), 2018 WL 4853041, at *2 (E.D.N.Y. Oct. 4, 2018) (awarding Mr. Byun a rate of $150 per hour and Mr. Schweitzer a rate of $100 per hour in the Eastern District of New York).

Accordingly, the Court awards the following rates to Plaintiffs' counsel: $300 per hour to Mr. Troy, $200 per hour to Mr. Byun, $150 per hour to Mr. Indelicato, $150 per hour to Mr. Schweitzer, and $100 per hour to both Ms. Huang and Ms. Yingchu Ho.

## B. Reasonable Hours Expended

"The party seeking attorneys' fees bears the burden of demonstrating that the claimed . . . number of hours [is] reasonable," and the "amount of time expended must be adequately supported by contemporaneous time records that specify relevant dates, time spent, and work done." *Creighton*, 2011 WL 4914724, at *6 (internal quotation marks and citations omitted). "Adjustments must be made to the number of hours expended based on case-specific factors, including deductions for 'excessive, redundant, or otherwise unnecessary hours.'" *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). "In so doing, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case

and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (internal quotation marks and citation omitted).

Here, Plaintiffs' attorneys provided a billing invoice, (Docket No. 87-1), and seek payment for a total of 264.2 hours worked, (Docket No. 87 at ¶ 69). Upon review, the amount of hours worked in this straightforward wage-and-hour case warrants reduction for several reasons. First, Plaintiffs' counsel billed travel time at their full rate. "Courts in this Circuit regularly reduce attorneys' fees by 50 percent for travel time." *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010). Moreover, Plaintiffs' counsel failed to distinguish travel time from legal tasks in multiple entries. *See Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *6 (S.D.N.Y. Sept. 29, 2009) ("it is not appropriate to lump travel time together with fully compensable time"). For example, Mr. Indelicato billed four hours at his full rate for "travel to, from and attend IPTC at SDNY-White Plains Court." (Docket No. 87-1 at 6). Similarly, Mr. Troy billed over 5 hours at his full rate for "Mediation and back [and] forth," on both April 4, 2017 and November 2, 2017. (*Id.* at 4, 8).

Second, counsel billed their full rate for administrative and non-legal tasks such as scanning documents, researching liquor licenses, confirming the location of mediations, preparing courtesy copies, establishing WeChat connections with their clients, coordinating trial availability and preparing binders. (Docket No. 87-1 at 4, 8, 11); *see Balu v. City of New York*, No. 12 Civ. 1071 (KPF), 2016 WL 884666, at *5 (S.D.N.Y. Mar. 8, 2016) ("Courts can also reduce hours where attorneys are performing clerical or administrative work."). The invoice also contains excessive hours for certain tasks, such as billing nearly half an hour reviewing a notice of appearance, (Docket No. 87-1 at 4), billing almost an hour drafting a *pro forma* deposition

notice, (*id.* at 6), and spending almost half an hour reviewing a two-sentence minute entry, (*id.* at 7). Furthermore, Plaintiffs' unsuccessful class certification motion, (Docket No. 39), justifies a further reduction in the requested fee amount. *See Siegel v. Bloomberg L.P.*, No. 13-CV-1351 (DF), 2016 WL 1211849, at *11 (S.D.N.Y. Mar. 22, 2016) (reducing the hours spent by counsel on an unsuccessful class certification motion by 50 percent).

"In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming fat from a fee application.'" *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (quoting *In re Agent Orange Prod. Liability Litig.*, 818 F.2d 226, 237 (2d Cir.1987)). Accordingly, the Court reduces all time charged by Plaintiffs' attorneys[10] by twenty percent for the reasons discussed above. After incorporating the reductions of hourly rates and hours worked, Plaintiffs are entitled to a lodestar amount of $50,956.00 in attorneys' fees, as set forth in the following table:

| Timekeeper | Rate | Hours | Fee |
|---|---|---|---|
| John Troy | $300/hour | 113.68 | $34,104.00 |
| George Byun | $200/hour | 45.92 | $9,184.00 |
| Joseph Indelicato | $150/hour | 5.92 | $888.00 |
| Aaron Schweitzer | $150/hour | 42 | $6,300.00 |
| Maggie Huang | $100/hour | 3.5 | $350.00 |
| Bella Yingchu Ho | $100/hour | 1.3 | $130.00 |
| **TOTAL** | | | **$50,956.00** |

---

[10] The Court does not reduce the amount of time billed by Ms. Huang and Ms. Yingchu Ho.

## C. Costs

Plaintiffs request costs in the amount of $3,138.01 for court filing fees, transcript requests, process server fees, interpreter fees, and delivery charges. (Troy Dec. at 13). Plaintiffs "[are] entitled to 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Polit v. Glob. Foods Int'l Corp.*, No. 14-CV-07360 (SN), 2017 WL 1373907, at *9 (S.D.N.Y. Apr. 13, 2017) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). Upon review, the costs sought by Plaintiffs are reasonable. Therefore, Plaintiffs are entitled to $3,138.01, the full amount of costs incurred in the instant matter.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to alter or amend the judgment is denied. Plaintiffs' motion to alter the judgment is granted. "[I]f any amounts [of damages awarded under the NYLL] remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4). Plaintiffs' motion for attorneys' fees and costs is granted in part and denied in part. The Court awards Plaintiffs $50,956.00 in attorneys' fees and $3,138.01 in costs.

The Clerk is respectfully requested to terminate the pending motions. (Docket Nos. 86 and 93).

Dated:   August 7, 2019
         White Plains, New York

SO ORDERED:

___Judith C. McCarthy_____
JUDITH C. McCARTHY
United States Magistrate Judge